HAYNES VS FARLEY, ex'or and BELL.

*As to the specific execution of contracts for the sale of lands.*

1. Where a vendee of lands takes a bond, conditioned for title at a future day, he may after breach of the condition, elect to proceed at law for damages, or apply to equity for a specific execution.

2. But where one elects in such case, to proceed at law, equity will not interpose, and compel the vendee to accept a conveyance,—the vendor shewing no excuse, by proof, for the failure to comply with his contract, anterior to the breach of it.

3. And, it seems, the retention of possession, by the vendee, after action brought for a breach of the bond, would not amount to a part performance of the contract, so as to preclude an action at law, for damages.

In error to a decree of the Circuit Court of Montgomery county, exercising Chancery jurisdiction.

This was a bill, filed by the testator of the one of the defendants in error, Farley, to enjoin a judgment at law.

The bill stated that Pinkston, the testator, with others, previously to the filing of the bill, had executed to Haynes, a bond, conditioned for the execution of titles to certain lands, within five years after its date. It charged, that Haynes well knew, that the lands sold to him, were the property of a company; and that the title to them, was ultimately to be obtained from the United States: And that the term of five years was fixed upon, as a probable time within which the titles would be complete. That some

HAYNES *vs* FARLEY, ex'or and BELL.

difficulty subsequetly ensued in effecting this object, in consequence of irregularity in the surveys of the lands; and that, consequently, the obligors, without their own default, were unable to comply with their bond, at the period limited in the condition. That Haynes, availing himself of this circumstance, commenced suit upon the bond, against Pinkston, alone, which he prosecuted to judgment, and was then seeking to satisfy. That during the pendency of this suit upon the bond, the obligors obtained a full and complete title to the premises; and that Pinkston offered to have conveyed a title to Haynes, but which he rejected. The bill prayed an injunction against the judgment at law upon the bond; and a specific execution of the contract of sale.

The injunction was granted, and at Fall term, eighteen hundred and thirty, dissolved.

Another bill was subsequently filed in the name of Pinkston and Bushrod W. Bell, setting forth the facts before mentioned, with the further allegations, and statements, that the former injunction had been dissolved, in consequence of informalities in the release of errors, and the injunction bond; and that, taking advantage of this matter, Haynes had ruled Bell, being then sheriff of the county, for a failure to make the money on the execution which had issued upon the judgment obtained against Pinkston. This bill further alleged, that ever since the commencement and prosecution of the controversy, and from the time of the contract of sale, the defendant Haynes, had been in the possession of the lands.

The bill, at this stage of the proceedings was an-

4 P          67

swered by Haynes, who did not materially controvert the statement in relation to the sale of the lands, and of the rendition of the judgment; but he denied that any difficulty occurred in obtaining the title to the lands, from the United States; relied upon the breach of the condition of the bond, and stated that no agreement was made as to the time when the title should be made, other than that contained in the bond. He further stated, that many delays occurred on the part of Bell, in making the money upon the execution; and also denied that he had the peaceable possession of the lands.

At Fall term, eighteen hundred and thirty-one, the death of Pinkston was suggested; and upon a bill of revivor, the suit was revived, in the name of Farley, the executor.

At Spring term, eighteen hundred and thirty-six, the cause came on for final hearing, upon the admission, that it was then in the power of the obligors, to make a good and sufficient title to the lands, and that such title had been tendered. And the Chancellor decreed a specific execution of the contract of sale, in ordering Haynes to receive a conveyance; and perpetually enjoined the judgment at law upon the bond.

This decree was complained of in error here.

HOPKINS, C. J.—On the twenty-sixth of April, eighteen hundred and nineteen, the plaintiff in error, received a bond in the penal sum of seven hundred dollars, payable to himself, and made by James R. Pinkston, and several other persons. According to the condition of the bond, it was to be void, if the obligors should, within five years from the date thereof,

make to the plaintiff and his heirs, a sufficient deed for the land described in the condition. At March term, eighteen hundred and twenty-nine, of the Circuit Court of Montgomery county, the plaintiff obtained a judgment at law against Pinkston, upon the bond, for the sum of two hundred and nine dollars.

On the fourteenth of September, eighteen hundred and twenty-nine, Pinkston obtained an injunction of the judgment, and in his bill, which was filed on the equity side of the same Court, and upon which the injunction was granted, he prayed for a specific execution of the contract for the sale and purchase of the land.

He alleged in the bill, in addition to the facts which have been mentioned, that Haynes had been in the possession of the land, ever since the sale of it to him: That when the obligors sold it to him, it was understood between them and him, that the title was in the United States, and that it should be conveyed to him as soon as the obligors, who were purchasers of the United States, could obtain it from the latter: That the time for the conveyance of the title to Haynes, which was limited in the condition of the bond, was supposed by the parties, to be sufficiently remote to enable the obligors to obtain the title from the United States: That some irregularity in the surveys, which had been made for the United States, caused a difficulty in obtaining the title, and that without any default on the part of the obligors, no patent was issued for the land, until after the commencement of Haynes' action upon the bond: That immediately after the obligors obtained the title, they offered to convey the

land to Haynes, and he refused to accept a conveyance.

A supplemental bill was afterward filed by Pinkston and Bushrod Bell, in which they alleged that a judgment had been obtained against Bell for the amount of that against Pinkston, for the failure of Bell, as a Sheriff, either to return or make the money upon an execution, which issued on the judgment against Pinkston. Upon this bill, an injunction of the judgment against Bell, was granted.

The answer of Haynes, denied that there was any other understanding between the obligors and himself, as to the time at which the title to the land should be conveyed to him, than that which appeared in the condition of the bond.

Other facts are stated, both in the bill and answer, of which it is unnecessary to take any notice.

Before the cause was heard, Pinkston died; and his executor, Jonathan C. Farley, made himself a party to it. It was heard upon the bills, answer, the bond as an exhibit, and the admission of Haynes' solicitor, that the obligors in the bond, were then able to make a good title, and that a sufficient deed, from them, was deposited in Court, for the acceptance of Haynes.

It is unnecessary to decide the question, whether a person who seeks the specific execution of an agreement ought to be permitted to show by parol proof, that the day for the performance of the contract, was a different one from that fixed in the written agreement. In this case, the allegation in the bill, that it was understood between the parties, the obligors should convey the land to the plaintiff in error, as soon as they could obtain a title from the

United States, is denied in the answer, and the answer is uncontradicted by any proof. Nearly five years elapsed after the expiration of the time within which they had bound themselves to convey the land, before Haynes obtained the judgment at law, on the bond. During all that time, Haynes could not have obtained, had he desired it, a specific execution of the contract.

The title was in the United States, and the obligors were incapable of performing their agreement.

No decree for a specific performance would have been made, if they, instead of Haynes, had applied for it, during that time, to a Court of equity. Equity neither requires a vendor to do what he has no right to do, nor compels a vendee to accept less than the complete title for which he has bargained.*     *2 Sto.Eq. 82—Fonb. Eq b.1,ch.

When Haynes commenced his action at law, for 3, §9, note the breach of the condition of the bond, neither of J.;2WLea the parties to it had any remedy in equity. Haynes 290, 299. had a right to his action, and had been entitled to it, from the time the breach occurred.

A vendee, with a valid agreement, may, after a breach of it, elect to proceed at law to recover damages, or in equity, for a specific execution. After he has elected to pursue the former course, the vendor can not, without some ground of equity, compel him to accept a conveyance. It does not appear, in this case, when the vendors made full payment to the United States, for the land; and the allegation in the bill, that a difficulty in obtaining the title from the United States, arose from an irregularity in the surveys, is denied, in the answer, and there is no proof of it. If this allegation consisted of matters

of fact, so distinctly stated as to be capable of proof, and that the effect of them could be determined by the Court, it would, denied, as it has been, and without proof as it is, be disregarded.

As Pinkston proved no excuse for the long delay, in obtaining the title, which he and the other obligors agreed to convey to Haynes, it is not necessary to determine what ground would be sufficient for a Court of equity to interpose in favor of vendors, and compel a vendee to abandon his remedy at common law, and accept a specific performance of the contract.

The view we have taken of the subject, is supported by the decision of the case of *Long vs Coldston*;[*] and it is opposed by no principle, that we know of, upon which a Court of equity acts, in disposing of applications for specific performance.

[*]1 Hen. & Munf. 111, 130.

If a vendee retain the possession of the land, after the vendor's breach of the agreement, in not conveying on the day fixed for the purpose, it may be evidence of his acquiescence in the delay, and that he continues to look to the fulfilment of the contract; but if, afterward, and before the vendor is able to convey, the vendee bring his action for damages, the assertion of his legal right, is a termination of his previous acquiescence, and evinces his election to rely upon his common law remedy.

Possession held by a vendee, after he brings such an action, is not an act in part performance of the contract. The contract is abandoned, as to all the claim which could be made upon it to a specific performance.

The claim of Bell, if he had any, to relief, rested

upon the ground on which Pinkston relied; and as we are of opinion that the execution of the contract, ought not to have been decreed, the decree must be reversed and the bill dismissed.

GOLDTHWAITE, J., not sitting.