# Micou *v.* Ashurst.

*Bill in Equity for Cancellation of Deed, Injunction, &c.*

1. *Loan of Confederate States bonds, as consideration.*—A mortgage will not be cancelled, nor declared void, because its consideration was a loan of Confederate States bonds.

2. *When equity will interfere between mortgagor and mortgagee.*—A court of equity will not entertain a bill the sole purpose of which is to declare that the relation of mortgagor and mortgagee exists between the parties to a contract. Whether the true character of the transaction appears on the face of the writings, or is established by parol evidence, a court of equity will not take jurisdiction, except for foreclosure or redemption, unless cancellation is sought.

3. *What relief may be had, inconsistent with specific prayer, or under bill in double aspect.*—Under a bill which specifically asks the cancellation of a mortgage, because given to secure a debt founded on an alleged illegal consideration, the complainant can not have a decree establishing the mortgage, and

| 55 | 607 |
|----|-----|
| 93 | 268 |
| 55 | 607 |
| 97 | 493 |
| 55 | 607 |
| 103 | 614 |
| 55 | 607 |
| 107 | 248 |
| 55 | 607 |
| 113 | 509 |
| 55 | 607 |
| 126 | 317 |

[Micou v. Ashurst.]

allowing him to redeem ; nor can the bill be framed with a double aspect, asking either a cancellation or redemption ; especially when there is no averment of ignorance of facts, or of a necessity for a discovery.

4. *Mortgagee's remedies.*—After the condition of a mortgage is broken, the mortgagee has three remedies, and may pursue any one or all of them until his debt is satisfied : (1) he may bring an action at law to recover his debt, or (2) an action of trespass or ejectment for the mortgaged premises, or (3) he may foreclose in equity; and a court of equity will not, unless some special reason is shown, restrain him in the pursuit of these remedies concurrently, nor compel an election by him.

5. *Whether contract is mortgage or executory sale.*—Where a purchaser of lands, being unable to complete his payments, borrows money for that purpose from a third person, to whom he has the legal title conveyed by his vendor, giving his notes for the repayment of the money, and taking a bond for title on their payment, the relation between the parties is not that of mortgagee and mortgagor, but that of vendor and purchaser.

6. *Vendor s remedies.*—A vendor, like a mortgagee, after default, has three remedies, and may pursue them all concurrently; and a court of equity will not, in the absence of some special equity, restrain him.

APPEAL from the Chancery Court of Elmore.

Heard before the Hon. CHARLES TURNER.

The material facts of this case may be thus stated : In August, 1862, Robert T. Ashurst purchased a tract of land from Robert Thompson, at the agreed price of $11,000, paying $1,000 cash, and agreeing to pay the balance as follows : $3,000 on the 1st November, 1862, and $7,000 on the 1st January, 1863. Thompson did not then have the legal title to the land, but had paid the entire purchase-money, and held the bond for titles of McKenzie & Wright, from whom he had purchased; and he transferred this bond to Ashurst, by written indorsement, on the payment of the $1,000. Being unable to meet the other payments as they matured, and learning that Thompson was willing to receive $7,000 of the purchase-money in bonds of the Confederate States, Ashurst applied to B. H. Micou for a loan of bonds to that amount, and Micou agreed to lend them to him ; and on the 8th October, 1862, when the agreement between them was consummated, and the bonds delivered, Ashurst gave Micou a receipt in the following words :

"Received, Tallassee, October 8, 1862, of Benj. H. Micou seven thousand dollars in Confederate bonds, namely," describing them. " The conditions of the delivery of said bonds by said Micou to Ashurst are agreed as follows : Said bonds are to be used by said Ashurst in part payment to Robert Thompson for a plantation purchased by said Ashurst of said Thompson; the balance of said payment, to the full amount of the purchase-money agreed on, to be furnished by said Ashurst. Titles are to be taken, on delivery of said bonds for said plantation, in the name, and for account of said B. H. Micou; and said Micou is then to give said Ashurst his bond for quit-claim titles to said lands, the condition

of said bond for titles to be as follows: Said R. T. Ashurst is to give his notes to said B. H. Micou—first, for $280, due and payable 1st January, 1863 ; also, his note for $2,560, due and payable 1st January, 1864; also, his note for $2,400, due and payable 1st January, 1865 ; also, his note for $2,240, due and payable 1st January, 1866 ; also, his note for $1,080, due and payable 1st January, 1867.   Now, all these aforestated notes being given, and well and truly paid at the time they become due, on completion of said payment, said bond, to be given said Ashurst by said Micou, is to become binding on said B. H. Micou, his heirs and executors, to make said Ashurst, his heirs and executors, quit-claim titles to said lands ; otherwise, said bond to become null and void."

Pursuant to this agreement, Ashurst executed his notes to Micou as stipulated; and on the 10th October, 1862, the whole of the purchase-money having been paid, Thompson executed to Micou a deed for the land, with covenants of warranty, in which his wife joined; and on the 14th November, 1862, Micou executed to Ashurst his bond for titles, conditioned as stipulated.   Ashurst went into possession of the land about the 1st November, 1862, and continued in possession up to the filing of the bill; and he paid his several notes as they matured, except the two falling due in 1866 and 1867.   On the 13th August, 1872, Micou having brought an action of ejectment for the lands, Ashurst filed the bill in this case, alleging that Micou held the deed from Thompson and wife only as security for the loan of Confederate States bonds, and that the notes given for the bonds were founded on an illegal consideration, and could not be collected by suit ; " or, if in this your orator is mistaken, that it was agreed and understood between the said parties that all of said notes should be paid and discharged in Confederate States money or currency," which "was worth about two for one, or nearly so," when said notes were given, and were perfectly worthless when the bill was filed; "and if your orator and said Micou should be held to be joint purchasers of said lands under said purchase from Thompson," that their equitable interests in the land should be determined by the relative portions of the purchase-money paid by them respectively.   The bill prayed an injunction of the action at law, a cancellation of the deed from Thompson, and of the two unpaid notes, "and for such other, further, and different relief as the facts of the case may entitle the complainant to ask and have ;" and the complainant offered to pay whatever sum might be found due from him, and to abide and perform the decree of the court.

On final hearing, on pleadings and proof, the chancellor held, that the object of the bill was to have the transaction

(40)

between Ashurst and Micou declared a mortgage, and that the complainant was entitled to a decree to that effect, though the bill was not framed for redemption.   He therefore rendered a decree, declaring that the relation existing between the parties was that of mortgagor and mortgagee; perpetually enjoining Micou from "asserting any claim to the land as the absolute owner thereof, under or by virtue of said transactions or instruments of writing, and from prosecuting or instituting any suit or suits for the recovery of said lands, or any portion thereof, as the owner of an indefeasible estate therein; but nothing in this decree shall be so construed as to prevent the said B. H. Micou from prosecuting any suit as mortgagee for the possession of said property, or as in any manner to limit him in the exercise of any of his rights and remedies as a mortgagee."   The chancellor's decree is now assigned as error.

ELMORE & GUNTER, with D. T. BLAKEY, for appellant.

ARRINGTON & GRAHAM, contra.

BRICKELL, C. J.—The original bill proceeds on the theory, that the complainant and defendant stand in the relation of mortgagor and mortgagee—that the mortgage debt, having been contracted for a loan of bonds of the Confederate States, is void, and incapable of enforcement; and that the complainant is therefore entitled to a cancellation of the evidences of the debt, and of the writings which constitute the mortgage; or, if the debt and mortgage are not void, it is averred that the debt was contracted with the understanding it should be paid in Confederate treasury-notes; and it is insisted it should now be reduced from the nominal amount, to the value of such notes at the time the debt became due and payable, in the present currency.   An injunction against the prosecution of pending actions of ejectment for the recovery of the mortgaged premises is prayed.   The complainant submits to abide the decree of the court in the premises, and offers to pay whatever may be decreed to be due the appellant.

It is not now insisted, nor does it appear to have been insisted before the chancellor, that the mortgage debt is void, because its consideration was a loan of Confederate States bonds; nor that the mortgage, if one exists, should for that reason be cancelled.   That question is put at rest, by the decision of this court, in *Whitfield v. Riddle*, 52 Ala. 467.   Nor is it insisted it is shown that the debt was contracted with an understanding that it should be payable in Confederate

[Micou v. Ashurst.]

treasury-notes. On the contrary, the evidence establishes there was no such understanding or agreement. It would seem to follow, necessarily, that if the bill was entertained, it could be entertained only as a bill to redeem. The chancellor declined to treat it as a bill for redemption, but retained it as a bill to have certain contracts between the parties declared a mortgage; and declaring them a mortgage, he perpetually enjoined the appellant from maintaining any action for the recovery of the lands, founded on any other title than that of mortgagee.

We cannot doubt the decree of the chancellor is erroneous. If we assume that the relation of the parties is that of mortgagor and mortgagee, and that this relation is not disclosed by the writings, but is derived from parol evidence of the intention of the parties, and the purposes for which the writings were executed, we do not suppose a court of equity would entertain jurisdiction, merely to declare the true relation of the parties, and the operation and effect in equity of the contracts and agreements into which they have entered; especially after the mortgage debt has become due, and the mortgagee is entitled to foreclose, and the equity of the mortgagor is to redeem. It is said, a court of equity will not do justice by piece-meal, and that it delights to quiet litigation. Hence, it is a well-defined principle, that if the jurisdiction of a court of equity attaches for one purpose, it will settle the litigation, without remitting the parties to a court of law, though, as to some of the matters involved, the remedy at law may be clear and adequate. So, it is a maxim, that he who seeks equity, must offer to do equity, and thereby give the court jurisdiction to decree against him, and in favor of his adversary, so far as equity may require it. Therefore, a bill by a mortgagor, assailing the mortgage debt as usurious, must contain an offer to pay the principal sum and legal interest, giving the court jurisdiction to decree that to the mortgagee, or it is wanting in equity. So, if it is insisted that an absolute conveyance is really a security for a debt, and therefore a mortgage, there must be an offer to pay the debt, or the court will not interfere. If there is such offer, the court can have the amount of the debt ascertained, decree that the complainant redeem on its payment, or, if he fail in its payment, that the mortgage be foreclosed. Equal justice is thereby measured out to both parties, and the litigation finally quieted. If the court assumed jurisdiction only to declare the conveyance a mortgage, one suit would be but preliminary to another, and the litigation protracted unnecessarily. If the writings disclose the true character of the transaction, there is no necessity for a decree declaring their

legal effect; and the court should not take jurisdiction, except for redemption or foreclosure, unless cancellation is sought. If the bill will not authorize a decree of redemption, it should have been dismissed, as it shows no ground for any other relief. We cannot perceive what relief it is to the complainant, to declare that he is a mortgagor, and the defendant a mortgagee. He is liable to every remedy as a mortgagor, that could be pursued against him if he was a vendee, as the defendant insists; and he would have the same rights, if a vendee, that he would have as mortgagor. A further decree would be necessary; some relief consequent on the declaration of his relation, or he is not advanced in obtaining his rights.

But, we concur with the chancellor, the bill is not filed for redemption; nor could a decree be founded on it that the complainant be let in to redeem. The averments of the bill are adapted only to a decree for the cancellation of the mortgage, because the debt is founded on an illegal consideration. As a general rule, a bill may be framed in a double aspect, or in the alternative, when either of the aspects or alternatives entitles the complainant to the same relief. But we do not understand that, when a bill is filed for a distinct purpose, which wholly fails, whether on the facts stated, or on the proofs, that it can be converted into a bill for another purpose. Nor do we understand, that a bill may aver either one or the other of two alternatives is true, when they are repugnant to and inconsistent with each other, and if the one is true, entitling the party to relief, wholly distinct from, and repugnant to that which would be granted if the other was true. Now, if the consideration of the mortgage debt was illegal, violative of positive law, and offensive to public policy, a court of equity would not entertain a bill for redemption, nor for foreclosure. The cancellation of the mortgage, as a cloud on the title of the mortgagor, would be, perhaps, the only ground on which the court would intervene. Averring the illegality of the debt, and the consequent invalidity of the mortgage, the appellant cannot then aver that he may be mistaken in this, and affirm their validity, and claim to redeem; especially when there is no averment of ignorance of the facts, and of a necessity for a discovery. Suppose a bill of this character should be confessed by the defendant, what relief would the court grant? which of the repugnant and inconsistent statements would be adopted? The averments of the bill not authorizing the specific relief prayed—the cancellation of the mortgage, and of the evidences of the mortgage debt, which was its primary purpose, and the special relief prayed—it should have been dismissed.

*Cresy v. Beavan,* 13 Sim. 353 ; *Shields v. Burrow,* 17 How. 130.

We are not sure that we understand the decree, so far as it relates to the injunction of the actions of ejectment—whether it was intended to perpetuate, or to dissolve it, or whether, limiting its operation to actions in which the appellant asserted an absolute, indefeasible estate in the lands, it was perpetuated, and dissolved as to actions in which he asserted that he was a mortgagee. If, as the chancellor supposed, the relation between the parties was that of mortgagor and mortgagee, it is clearly settled in the law of this State, that, after condition broken, the mortgagee has three remedies, either of which he may pursue ; and all of which he may pursue, until his debt is satisfied. 1. He may bring an action at law to recover the debt. 2. He may bring trespass, or ejectment, to recover the possession of the mortgaged premises. 3. He may, in equity, foreclose the equity of redemption, and sell for the payment of the debt.—*Duval v. McLoskey,* 1 Ala. 708. These remedies he may pursue concurrently ; and unless some peculiar reason exists, a court of equity will not restrain him in the pursuit of the one or the other, or compel him to an election between them.—Kerr on Inj. 191. The appellant was pursuing but one remedy, to which he had a clear, legal right; and there is not a fact averred, or apparent from the evidence, which justified interference with him. If he proceeded at law in ejectment, it must have been on a legal title ; and if, as the chancellor supposed, his title was that of a mortgagee, it was, at law, an absolute, indefeasible estate, after the expiration of the law day, and the failure of the mortgagor to perform the condition. On no other than this legal title could he maintain ejectment; and if the decree of the chancellor, limiting him to an action of ejectment on the qualified title (as the chancellor seems to have supposed it) of a mortgagee, has any operation, it is an inhibition of an action of ejectment, and an unwarranted deprivation of a legal remedy. A court of equity never interferes with the mortgagee, pursuing his legal remedies, except on terms which compel the mortgagor to do equity, and, on his offer to do equity, perform the condition which he has broken.— *Gliddon v. Andrews,* 14 Ala. 733 ; *Williams v. Troy,* 39 Ala. 118. This, it is evident, it was not the purpose of the appellee to do ; and the injunction was the instrumentality he was employing, to delay, if not to avoid performance, and to prevent the appellant from obtaining the rights to which he is entitled in law and in equity. The injunction ought never to have been granted, and should have been unqualifiedly dissolved.

We have thus far considered the case, as if the parties

stood in the relation of mortgagor and mortgagee. But that is not their relation. A mortgage is defined by Chancellor Kent as "the conveyance of an estate, by way of pledge for the security of a debt, and to become void on payment of it. The legal ownership is vested in the creditor; but, in equity, the mortgagor remains the actual owner, until he is debarred by his own default, or by judicial decree."—4 Kent, 151. Again, he says, "The condition, upon which the land is conveyed, is usually inserted in the deed of conveyance; but the defeasance may be contained in a separate instrument; and if the deed be absolute in the first instance, and the defeasance be executed subsequently, it will relate back to the date of the principal deed, and connect itself with it, so as to render it a security in the nature of a mortgage. The essence of the defeasance is, that it defeats the principal deed, and makes it void, if the condition be performed."—4 Kent, 157. If the mortgagor performs the condition of the mortgage, according to its terms, whether the condition is inserted in the conveyance made by him, or is contained in a separate instrument, and therefore called a defeasance, the estate of the mortgagee is defeated, and the mortgagor is in as of his original estate.—2 Wash. Real Prop. 152; 4 Kent, 173. The only difference between a condition and a defeasance is, that the one is inserted in the deed itself, and the other is the expression of the condition in a separate instrument. The legal effect and operation of each is the same, when performed, discharging and disincumbering the estate of the grantor.—2 Black. 342; *Erskine v. Townsend,* 2 Mass. 497; *Watkins v. Gregory,* 6 Blackford, 114; *2d Ward Bank v. Upmann,* 2 Wis. 499. It results, therefore, that if the condition is expressed in the conveyance, it must be reserved to the grantor; or if in a separate instrument, that it must be between grantor and grantee—they must be the parties to it, and the benefit of performance must enure to the grantor. Otherwise, it cannot have the effect and operation which is an indispensable attribute of a mortgage—defeating, rendering void, the conveyance of the mortgagor, and restoring him on performance at the time appointed to his original estate.

Now, in the case before us, if Ashurst had paid each of his notes to Micou, the estate created by Thompson would not have been defeated; it would not have ceased according to any term of its creation, nor would Thompson have been in as of his original estate. Such results were not in contemplation of the parties, and are inconsistent with their purposes. Thompson completely divested himself of all estate in the lands by the conveyance to Micou, which is ab-

solute and indefeasible, and was so intended. The convey-
ance was made at the request of Ashurst, and by him ac-
cepted as a full compliance of the duties and obligations im-
posed on Thompson, by the contract between them. Micou,
doubtless, holds the lands in trust for Ashurst; and when
Ashurst shall perform the contract on his part, he can com-
pel the execution of the trust. But this trust bears no other
resemblance to a mortgage, than that its execution, or the
right to its execution, depends on the payment of money,
which is usually the condition the performance of which de-
feats a mortgage. In no other respect do they bear a resem-
blance. Such contracts between the purchasers of real es-
tate, and others having some prior estate or interest, are not
of infrequent occurrence, and we are not aware they have
ever been held to constitute a mortgage. The condition,
which gives to a conveyance the character of a mortgage, is
matter of agreement between the grantor and grantee, and
is reserved for' the benefit of the grantor. If there is no
agreement between them, and no condition, on which the
conveyance is defeasible, whatever may be the trust with
which the estate of the grantee is charged in favor of others,
not parties to the conveyance, it is not a mortgage.—*Shaw
v. Erskine,*43 Me. 371; *Flagg v. Mann,* 14 Pick. 467; *Warren
v. Lewis,* 53 Me. 463; *Low v. Henry,* 9 Cal. 538; *Fowler v.
Rice,* 27 Pick. 100; *Stephenson v. Thompson,* 13 Ill. 186. We
are, therefore, of the opinion, the chancellor was in error in
declaring that Ashurst was a mortgagor, and Micou a mort-
gagee of the lands.

The true relation of the parties is that of vendor and ven-
dee, the vendor retaining title as a security for the payment
of the purchase-money. The vendor is a trustee of the title,
for the vendee; and the vendee, of the purchase-money, for
the vendor. The law annexes many of the incidents of a
mortgage to this relation. The vendee is entitled to posses-
sion, free from all liability to account for rents and profits,
until the vendor ejects him. The vendor may proceed by
bill in equity to enforce the lien given him by law, for the
payment of the purchase-money. He may sue in ejectment
for the recovery of possession of the lands, and may sue at
law for the recovery of the purchase-money. These reme-
dies he may pursue concurrently, as a mortgagee may; and
a court of equity, in the absence of some evidence of fraud
or oppression, or of some fact rendering it inequitable, will
not restrain him from pursuing them all at the same time.
*Kelly v. Payne,* 18 Ala. 371; *Conner v. Banks,* Ib. 42; *Haley
v. Bennett,* 5 Porter, 472; Kerr on Inj. 191.

It may seem that, practically, it is of but little importance,

whether the parties are mortgagor and mortgagee, or vendor and vendee. Yet, this would be a very narrow and superficial view of the subject. Apart from the fact that the mortgagor can maintain no action at law against the mortgagee, and can maintain no bill in equity except for redemption, the relations are wholly distinct. If the vendee makes punctual payment of the purchase-money, and the vendor refuses to convey, he may file a bill for specific performance of the contract of purchase; or, if he has a bond for conveyance of the title, he may sue at law to recover damages for its breach. *Haynes v. Farley*, 4 Port. 528. If a mortgage debt is founded on an illegal consideration, a court of equity will not foreclose it, and would restrain the mortgagee from proceeding in ejectment at law for recovery of possession. If a vendor was pursuing an action of ejectment at law against the vendee, a court of equity would not interfere to enjoin him, unless the vendee offered to perform the contract of purchase. Without extending this opinion, we may say that, while it is certainly true that a vendor, retaining title as a security for the payment of the purchase-money, has a lien, to which a court of equity attaches many of the incidents of a mortgage, the parties are not mortgagor and mortgagee, but vendor and vendee, and the two relations cannot be confounded.

The decree of the chancellor is reversed; and this court, proceeding to render the decree he ought to have rendered, doth order, adjudge, and decree, that the injunction granted in this cause be dissolved; and it is further ordered, adjudged, and decreed, that complainant's bill be and stand dismissed out of the Chancery Court, and that he pay the costs in this court and in the Chancery Court.