| 36 | 147 |
| 108 | 538 |

## SWIFT *vs.* SWIFT.

[BILL IN EQUITY TO ESTABLISH ABSOLUTE BILL OF SALE AS MORTGAGE; FOR REDEMPTION, AND ACCOUNT.]

1. *Contract held conditional sale, and not mortgage.*—A written instrument, signed by the defendant, reciting that he had *purchased* from the complainant several slaves, specifying the name and separate value of each, and then stipulating that, if the complainant "shal redeem, or cause to be redeemed, any part of said negroes within seven years", the defendant would make a specific deduction from the value of each,—whether considered by itself, or in connection with an absolute bill of sale, executed on the next day, which acknowledged the receipt of the money in full payment for the slaves, and contained a warranty of soundness and title, is a conditional sale, and not a mortgage; nor will a court of equity declare the contract to be a mortgage, on proof that the complainant at first applied to the defendant for a loan of money, or other pecuniary aid—that the defendant declined to loan money, but made another proposition in reply, to which the complainant did not accede; and that by the arrangement finally concluded between them, the defendant assumed a large debt due from the complainant to a third person, took the negroes at the prices specified in the writings above mentioned, and received from the complainant his several promissory notes for the difference between the aggregate price of the slaves and the amount of the assumed debt; there being no proof of fraud, imposition, or unfairness, nor any great disparity between the value of the slaves and the price agreed to be paid.

2. *Variance between allegations and proof; sufficiency of tender.*—Under a bill which alleges that a contract for the sale of slaves was a mort-

. gage, and prays for a redemption and account, if the evidence shows that the contract was a conditional sale, there is a fatal variance between the allegations and proof; nor could a redemption be decreed, when the only tender alleged in the bill was coupled with a demand for hire which, under the contract, the defendant had a right to refuse.

APPEAL from the Chancery Court of Dallas.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed, on the 24th March, 1855, by Theodorick Swift, against his brother, Wiley P. Swift, and alleged, that the complainant, being largely indebted, and unable to meet his liabilities without a sale of his property, applied to his brother for pecuniary assistance; that the latter responded to his application, by letter dated the 10th January, 1850, (which was made an exhibit to the bill,) "proposing to aid him on condition that complainant would give him the control of his property"; that on the 3d March, 1850, "in conformity with the proposition evinced in said letter, and in consideration of the assistance of said Wiley P. Swift, by loan of his name to complainant, to raise the sum of $12,505," complainant executed and delivered to defendant a bill of sale for seventeen slaves; that the defendant executed and delivered to complainant, on the same day, "as a condition and qualification in writing to the said bill of sale," a written instrument acknowledging the defendant's right to redeem the said slaves, on the terms therein specified, at any time within seven years; that this agreement and the bill of sale "are parts of the same contract, and have reference to the same slaves, and the money loaned by Wiley P. Swift to complainant was by virtue of these writings"; that, "in addition to the security given by said slaves and bill of sale," complainant executed to said defendant his three promissory notes, for the aggregate amount of $4,305, due the 1st March, 1851, 1852, and 1853, respectively; that defendant "never did advance or pay to complainant the said sum of $12,505, but executed his note for that amount to one Thompson, to whom complainant was indebted, and required complain-

ant to become his surety on said note"; that the defendant has had the use and possession of the slaves since the time when said contract was made, and now claims to hold them as his own; and that the complainant has demanded the slaves, and offered to pay whatever balance might be found due to the defendant on a settlement of their accounts, after deducting the reasonable hire of the slaves while in the defendant's possession. The prayer of the bill was for a redemption and account, the cancellation of the notes and bill of sale, and general relief.

The letter of the 10th January, 1850, (omitting the immaterial portions,) was as follows: "After receiving and reading your letter, I feel much for your situation, particularly on account of your children. But you are mistaken as to think I am out of debt and able to help you. It will be a tight squeeze for me to get through with my payments, on account of only making a half crop. But I will make you a proposition, and it is the only one I will do, after deliberately considering your case. If you do not owe more than twelve or fourteen thousand dollars, and Thompson will see proper to make the amount in three payments,—twelve months to the first payment, which is as soon as I can make it; and you are disposed to give me control of your property; and let me bring your negroes to Alabama, to be entirely under my control and management, leaving you a fine house [and] servants—Either rent or sell your good plantation, as you call it, making thirty bales of cotton a year. I have either more land than I can cultivate, and can clear enough by planting time to make more than your farm will make; and if I can't have land enough, I will hire out a part of your negroes, and will pay your debts, and hold your property until I consider that I have made the amount, and save the property for your children, if I don't for you. If it is necessary that a payment of cash is to be made, I will say, Berry Burton can raise the amount from —— estate, which amount I will become responsible for; so, if Berry have any feeling or disposition to save your property for your children, they can help. You can show this letter to Thompson; and if this arrange-

ment will do, write immediately, and I will put my hands to clearing, and bring a wagon or two, if necessary, to move your negroes. I will not involve myself, unless I have the entire control of your property, and that at home; for I have no confidence in your plantation, and it is too far from home. But, if my propositions do not suit you, and you find you will have to sell a part of your property, it is a very favorable time for good prices", &c.

The writing signed by the defendant, containing the stipulation as to the redemption of the slaves, which was also made an exhibit to the bill, was in the following words:

"State of Mississippi, } Articles of agreement between Noxubee county.  } W. P. Swift and Theod. Swift, as follows: W. P. Swift having purchased from Theod. a lot of seventeen negroes—say, Edmund, valued at $850; his wife, Susan, valued at $600; boy Jack, at $400; Martha, valued at $300; Stephen, at $200; Mary, $200; Fennel, $150; and child Handy, $100,—amount of the family, $2,800; July and child, $750; Chloe, $600; Olive, $650; Nicodemus, $700; Elijah, $450; Clark, $750; Joe, and his wife, Mary, valued at $1,500—if said Theod. Swift shall redeem, or cause to be redeemed, any part of said negroes within seven years, I will deduct fifty dollars from the value of each grown hand, according to the above named prices; and the young negroes can be redeemed, within two years at least, with the father and mother; if not in two years, to be redeemed at what they may be valued at, allowing for the growth of them; and if the above named negroes are not redeemed in seven years, the above obligation will be null and void. March 3, 1850.

W. P. SWIFT."

The defendant answered the bill, admitting the complainant's alleged application to him for pecuniary assistance, and his response by letter to that application; alleging that the complainant did not accept the proposition made in said letter, and that it had no connection with the contract afterwards entered into between them; admitting his execution of the writing dated the 3d March, 1850, but insisting that it was void as a contract,

because executed on Sunday; and alleging that he acquired and held the slaves under an absolute purchase from the complainant, as shown by his bill of sale, dated the 4th March, 1850, which was made an exhibit to the answer. This bill of sale is in the usual form—acknowledges the receipt of $8,200, "in full payment for seventeen negroes", (the names and ages of which are specified,) and contains a warranty of soundness and title. The defendant further alleged in his answer, that the amount specified in the bill of sale, as the price of the negroes, was paid by his assuming a debt of $12,500, due from the complainant to one Thompson; and that the complainant executed to him his four (not three, as stated in the bill) notes for the difference between the two sums.

On final hearing, on pleadings and proof, the chancellor dismissed the bill, but without prejudice to the institution of an action at law, or the filing of a bill to compel the specific execution of the contract dated the 3d March, 1850; and his decree is now assigned as error.

ALEX. & JNO. WHITE, for appellant.

WM. M. BYRD, contra.

R. W. WALKER, J.—1. Whether the instrument executed by the defendant on the 3d March, 1850, be considered by itself, or in connection with the absolute bill of sale executed by the complainant on the next day, it is not, either in form, or in legal effect, a mortgage, but shows a sale of the slaves by the complainant to the defendant, with the right secured to the former to repurchase all or any of them, within the period, and on the terms specified in the first named writing. But a contract, which is in form a conditional sale, will be treated as a mortgage, if it is shown by parol evidence that the object of the transaction, as understood by both parties, was to create a security for a debt: and in every case, where the question to be determined is whether a particular transaction is to be considered a sale (either absolute, or conditional) or a mortgage, this is the turning-point of the inquiry. For a mortgage is essentially a security for a debt; and

the rule is without exception, that when no debt exists, a mortgage is impossible. It is a necessary ingredient of a mortgage, that the mortgagee should have a remedy against the person of the debtor. There can be no right of redemption on one side, unless there be the right of foreclosure on the other.

In the present case, the evidence which is set out in the record fails to satisfy us that the object of this transaction, as understood by both parties, was to create a security for a debt. As to the $8,200, the consideration paid for these negroes, it is not shown that the complainant remained under any obligation, express or implied, for its repayment to the defendant. On the contrary, the inference is unavoidable, that the arrangement which the parties made did not create the relation of debtor and creditor between them, except to the extent of the difference between the agreed price of the slaves, and the amount of the debt which the defendant assumed for the complainant. For this difference, the complainant executed to the defendant his four notes, as testified to by the witness Goodwin; but for the $8,200, the price at which the negroes were taken, no note, or other evidence of indebtedness, was given. If the defendant, upon such evidence as is set out in this record, had either brought an action at law against the complainant for the recovery of the $8,200, the agreed price of these slaves, or filed his bill praying a sale of the slaves, the application of the proceeds to the repayment of the purchase-money, and a decree against the complainant for whatever balance might still remain due, it is clear that he must have failed in the suit.

It is true that the contract seems to have had its origin in, or rather to have been preceded by, a proposition for a loan; and this, it is well settled, is a circumstance which strengthens the inclination which, in cases of doubt, courts always feel, to consider the transaction a mortgage, rather than a conditional sale. For some reason which does not appear, the proposition which the defendant made by letter, in answer to the complainant's appeal for aid, was not acceded to; and the arrangement which was

finally made, was altogether different, in substance as well as in form, from that which the defendant at first proposed. This first proposition clearly contemplated, that all of the negroes of the complainant were to be transferred to the defendant, solely for the purpose of securing the latter against liabilities to be incurred for the benefit of the complainant; while, on the other hand, the arrangement finally concluded between the parties, so far as it relates to the seventeen slaves named in the two writings, was neither a loan of money, nor the creation of a debt, but a sale of the negroes for a consideration then given—namely, the discharge by the defendant of liabilities of the complainant, amounting to $8,200; that being the sum agreed upon as the aggregate value of the slaves. The stipulation securing to the complainant the right to redeem any *part* of the slaves, within the period designated, is a strong circumstance to show that the transaction was a conditional sale, and not a mortgage. The making of the first proposition certainly did not deprive the defendant of the right afterwards to negotiate for and acquire the absolute title. This he appears to have done, in good faith. There was no such disparity between the value of the slaves, and the price paid, as to cast suspicion on the transaction; nor do we find any evidence showing that the defendant was guilty of fraud, imposition, or unfairness.

Under all the circumstances disclosed in the record, we must treat the transaction between these parties, not as a mortgage, but as a conditional sale, the terms of which are set forth in the writing executed on 3d March, 1850.—Eiland v. Radford, 7 Ala. 726; Sewall v. Henry, 9 *ib*. 24; Murphy v. Barefield, 27 *ib*. 634; West v. Hendrix, 28 *ib*. 234; Sewell v. Price, 32 *ib*. 97; Crews v. Threadgill, at the last term; White & Tudor's Lead. Cases Eq., vol. 2, pt. 2, 431–442, and cases there cited.

2. If it be conceded, that a court of chancery would take jurisdiction of a bill for the specific performance of the defendant's contract to resell all or any of the slaves on the terms set forth in the writing executed by him, it is clear that the complainant has no right, under this bill,

to any such relief. In the first place, the bill alleges, that the contract between the parties was a mortgage, not a conditional sale; whereas it was, in fact, a conditional sale, and not a mortgage. The contract proved is, therefore, not the contract alleged. In the second place, the defendant would not, under the contract, be chargeable with the hire of the slaves; and as the only offer to re_deem, alleged in the bill, is one which was coupled with a demand for hire, and which, therefore, the defendant had the right to refuse, it follows, that the complainant shows no right to relief founded on the contract.—Murphy v. Barefield, 27 Ala. 634; Farrelly v. Robinson, 16 ib. 472; Casey v. Holmes, 10 ib. 777; Bell v. Thompson, at the last term; McLeod v. Powe, 12 Ala. 9.

Decree affirmed.