Glendenning vs. Johnston and others.

GLENDENNING VS. JOHNSTON and others.

DEED: *Whether a mortgage, or an absolute conveyance.*

A. conveyed land to B. (by deed absolute on its face) to secure the pay-
ment of money. Afterwards C. advanced money to pay A.'s indebted-
ness to B., and B. executed a deed of the land (absolute on its face)
running to C., while C. executed an agreement to resell the land to
A. upon repayment by A. of the money so advanced, within thirty
days; and both instruments were left in the hands of B., with in-
structions, if the money were repaid within thirty days, to deliver
the deed to C., and the agreement of resale to A., but if repayment
were not so made, to deliver *both* instruments to C. The money was
not repaid, and the instruments were both delivered to C., A., *after*
the default, directing B. to make such delivery. *Held,* that the deed,
on its delivery to C., conveyed the land to him *absolutely,* and was
*not a mortgage.*

APPEAL from the Circuit Court for *Fond du Lac* County.

The plaintiff was the owner of certain land in Dodge county,
and conveyed the same to one William Hobkirk as security
for a loan of money. Afterwards the defendants *Frank* and
*John Johnston* advanced the money to pay the indebtedness of
the plaintiff to Hobkirk, and the latter signed, sealed and ac-
knowledged a conveyance of the land to the *Johnstons.* This
conveyance is absolute on its face. At the same time the
plaintiff and the *Johnstons* signed an instrument in writing,
which is not contained in the record, but which is described in
the finding of the court as an agreement for the resale and pur-
chase of the land. By mutual arrangement between the parties
interested, neither of these instruments was delivered, but the
conveyance was left in the hands of Hobkirk, and the agree-
ment also was placed in his hands. These transactions occurred
in 1860. In a little over thirty days after they were so left
with Hobkirk, he delivered both instruments to the *Johnstons,*
who recorded the conveyance. In 1861 or 1862, the latter ob-
tained possession of the land, and have ever since retained such
possession.

This action is brought for the purpose of having such conveyance to the *Johnstons* adjudged a mortgage, for an account of rents and profits, and to redeem.   The defendants answer a general denial and the statute of limitations.   The wives of *Frank* and *John Johnston* are made parties to the action, because the land in controversy had been conveyed to them by their husbands through the intervention of a trustee.

The foregoing facts are not controverted.   The controversy is relative to the conditions upon which the conveyance and agreement was left in the hands of Hobkirk, and the positions of the respective parties in relation thereto are stated in the opinion.

The circuit court gave judgment dismissing the complaint, with costs.   The plaintiff has appealed therefrom to this court.

*Connit & Baker* (with *A. Scott Sloan*, of counsel), for appellant, argued that the transaction constituted an equitable mortgage, and *Glendenning* was entitled to redeem. ˈ *Rogan v. Walker*, 1 Wis., 527 ; *Plato v. Roe*, 14 id., 453.   Whenever a conveyance transferring an estate was originally intended between the parties as a security for money, whether this intention appear from the same instrument or from any other, it is always considered a mortgage.   Story's Eq. Jur. (7th ed.), p. 1018 ; 12 How. (U. S.), 139 ; *Elliott v. Wood*, 53 Barb., 285.   And this intention may be shown even by parol.   *Sweet v. Mitchell*, 15 Wis., 641 ; *Hodges v. Marine Fire Ins. Co.*, 4 Seld., 416 ; *Despard v. Walbridge*, 15 N. Y., 374 ; *Sturtevant v. Sturtevant*, 20 id., 40. Such original intention being once shown, no subsequent act of the parties, short of a release, will change the character of the transaction.   "Once a mortgage, always a mortgage."   Powell on Mort., 116, 117, 127, note 7.   Even in case of a conditional sale, equity will declare it a mortgage.   PAINE, J., in *Plato v. Roe*, *supra*.   The deed could not have been deposited with Hobkirk as an *escrow ;* because he was the grantor named in it, and to be an *escrow*, the deposit must be with a stranger.

*E. S. Bragg*, for respondents :

If the agreement between the parties was at its date a security for a loan of money, and the deed with the defeasance, in equity, a mortgage, still, if the mortgagor surrendered his equity of redemption, abandoned or waived it, and surrendered his defeasance, he will not be permitted, eleven years after, to obtain relief in equity. The surrender was a bar. *Vennum v. Babcock*, 13 Iowa, 194; *Trall v. Skinner*, 17 Pick., 213; *Marshall v. Stewart*, 17 Ohio, 356; *Harrison v. Phillips Academy*, 12 Mass., 456; *Falis v. Conway Ins. Co.*, 7 Allen, 49; Dart on Vendors, 513, 514; 1 Sugden on Vendors, 256, note (e); *Green v. Butler*, 26 Cal., 602; *Botsford v. Burr*, 2 Johns. Ch., 415. Suppose the land had largely depreciated in value, and the plaintiff had become rich, so that a judgment against him would be good, and that these defendants had filed a bill to foreclose their deed as a mortgage, and prayed judgment over for a balance against the plaintiff: could they have made a case, when it appeared that they had accepted of a surrender and cancellation of all evidence of indebtedness from the plaintiff? 2. But this deed and bond never constituted a mortgage, because the deed was deposited in escrow with Hobkirk, to be delivered upon condition only. If plaintiff did not pay the money by a day certain, *their liability to pay ceased*. When the deed was delivered by Hobkirk, no debt existed for which it was security; and the deed vested the fee in the grantee. " Where, by the terms of the agreement, the grantor has the privilege of refunding or not at his election, then the consideration must be deemed purchase money, and the transaction a sale upon condition." *Saxton v. Hitchcock*, 47 Barb., 220; *Swetland v. Swetland*, 3 Mich., 482; *Robinson v. Cropsey*, 2 Edw. Ch., 138; *S. C.*, 6 Paige, 480; *Conway's Ex'r v. Alexander*, 7 Cranch, 237.

LYON, J. If the position of the plaintiff is correctly understood, it is, that the agreement or defeasance signed by the parties and left with Hobkirk, was not so left in *escrow*, but

merely for convenience, and that, although it did not pass into the actual possession of the plaintiff, there was still a valid delivery thereof to him, and the same was a valid, subsisting agreement between the parties when the conveyance was delivered to the *Johnstons.* If such were the facts (and the testimony introduced by the plaintiff tends to prove the same) the case is, in principle, like that of *Wilcox v. Bates*, 26 Wis., 465, and the conveyance to the *Johnstons*, although absolute on its face, is only a mortgage.

The theory of the defendants is, that neither the deed nor the defeasance was delivered, but both remained in the hands of Hobkirk as *escrows* — the defeasance to be delivered to the plaintiff in case he repaid the advances made for him by the *Johnstons*, within thirty days, and, if the plaintiff failed to do so, then both the defeasance and the conveyance to be delivered to the *Johnstons.* The testimony introduced by the defendants tends to prove their theory, and tends also to prove that after he had made default in such payment, the plaintiff gave special directions to Hobkirk to deliver both instruments to the *Johnstons.*

The circuit court found that the theory of the defendants is the true one, and that the deed was delivered, and the defeasance surrendered to the *Johnstons* pursuant to the voluntary directions of the plaintiff to Hobkirk. The proofs have all been carefully considered, and we are satisfied that the findings of the circuit court are sustained by a clear preponderance of the testimony.

The difficulty with the plaintiff's case is, that when the conveyance in question was delivered and the title passed to the grantees by virtue of it, there was no valid, subsisting contract of defeasance in existence. Before such delivery, the inchoate defeasance which remained in *escrow*, was forfeited and rendered inoperative, and incapable of a valid delivery to the plaintiff, by his default, and was by his voluntary act surrendered to the *Johnstons.* Such default and voluntary sur-

render amounted to a complete cancellation of the defeasance, and left the conveyance to take effect, on delivery, as an absolute conveyance of the land, according to the terms of the deed, the same as though no agreement to reconvey had ever been drawn up, signed and deposited as aforesaid. If there is any rule of law by which a deed or conveyance of land delivered under such circumstances, the same being unconditional by its terms, can be adjudged to be only a mortgage, or any case which so holds, the same has escaped our observation.

The whole transaction amounts to just this : The *Johnstons* advanced a sum of money for the use and benefit of the plaintiff. It was agreed between them that such advance, if repaid in thirty days, should be a loan, but if not repaid in that time it should be the consideration for an absolute conveyance of the land in question. For that period it was optional with the plaintiff to make the transaction either a loan of money or an absolute purchase and sale of land. By failing to repay the money he elected that the transaction should become a valid, executory contract for an absolute sale of the land, which was fully consummated by the delivery of the deed. Until the plaintiff made default, the character of the conveyance held by Hobkirk was undetermined. The plaintiff might have rendered it a mortgage, but he failed to do so; and hence, upon being duly delivered to the grantees named in it, it conveyed to them the title which it purports to convey, to wit, an absolute, unconditional title to the land in controversy.

The maxim "once a mortgage, always a mortgage" is invoked to sustain the plaintiff's case. If the maxim be a correct one, there is no room for its application here, for the reason already suggested, that the conveyance to the *Johnstons* never was a mortgage.

A. applies to B. for a loan, and B. advances the money. The oral agreement between them is, that if A. repay the money in thirty days, the advance shall be considered a loan,

and B. shall accept payment and cancel the debt; but if not repaid in thirty days the same shall be a full payment for the farm of A., who, in that event, promises to convey it absolutely and unconditionally to B.  The money is not repaid within the time limited, and thereupon A. executes to B. an unconditional conveyance of the farm.  No person will contend for a moment that such coveyance is only a mortgage. And the principle is the same, if, when the money is advanced by B., A. made his deed of the farm and deposited it with C. in *escrow*, and, after default, voluntarily directed C. to deliver it to B.

This is a stronger case against the plaintiff than the one supposed.  For in this case the defeasance was reduced to writing, signed by the parties, and deposited in *escrow*, and the plaintiff voluntarily directed that it be surrendered to the *Johnstons*, which surrender, as before observed, cancelled it.  In the case above supposed there may be some little ground for saying that there was a contract of defeasance in existence when the conveyance was delivered, which changed the character of the instrument.  But here the facts found to exist seem to leave no ground whatever upon which to predicate such claim; for that which would have been a contract of defeasance, had it been delivered to the plaintiff, was, by the default and the voluntary act of the plaintiff, entirely annulled, and never had an existence, as a contract, after the conveyance was delivered to the *Johnstons*.

The conveyance being unconditional in its terms, and there never having been any contract of defeasance in existence from the time the conveyance was delivered to the grantees named therein (and none at the time it was so delivered), it must be held that the instrument is what it purports on its face to be — an absolute, unconditional conveyance to such grantees, of the whole title, whether legal or equitable, to the land described therein.

Considerable testimony was introduced bearing upon the

defense of the statute of limitations, interposed by the answer; and some testimony was elicited tending to show that the action is being prosecuted pursuant to a champertous agreement. But inasmuch as the foregoing views are decisive of the case, we feel ourselves relieved from the necessity of discussing or examining those subjects.

*By the Court.*— The judgment of the circuit court is affirmed.