# Haynie, Adm'r *v.* Robertson.

## *Bill in Equity to redeem.*

1. *Conditional sale; what constitutes.*—Where there is no debt or obligation to pay, there can be no mortgage. Consequently, when the grantor conveys by absolute deed, with covenants of warranty, and takes from the grantee an obligation in the form of a penal bond, which recites the conveyance, and also that the parties have agreed that the grantor may have the right and privilege to redeem at a stipulated price, and within a specified time, and it is conditioned that the grantee will convey according to the agreement, but does not bind the grantor to redeem, according to the agreement, the transaction is a conditional sale and not a mortgage, although it originated in a loan of money.

APPEAL from the Chancery Court of Mobile.
Heard before the Hon. HURIOSUO AUSTILL.
This was a bill filed by one Chambers, the intestate of the appellant, against the appellee Robertson and others, to redeem a certain store which had formerly belonged to Chambers.
The case, made by the pleadings, is as follows : Chambers,

appellant's intestate, being greatly embarrassed and executions being in force against his property, in April, 1867, accepted a loan, proposed by the defendant Hibbs, on the following terms; Hibbs agreed to loan him five thousand dollars with which to pay off the execution against him, which amounted to about forty-one hundred dollars, and also a mortgage held by one Brady on a certain store owned by him in Mobile. Chambers was to pay him twenty-five hundred dollars for the use of the money for two years, give a deed to the store above mentioned, taking from Hibbs at the same time a written agreement to reconvey the store, at any time within two years, upon the payment to him of seventy-five hundred dollars.

The bill charges, that after the deed had been delivered to Hibbs, he gave to one Secor five thousand dollars, with instructions to pay off the mortgage on the store and the amount of the executions against Chambers. In compliance with this request Secor took the money and paid the amount of the judgment and costs, for which executions had been issued. The judgment being larger than anticipated, and not enough remaining to pay off the mortgage to Brady, Secor deposited the balance with one Dorrance, who soon after failed. Chambers called on Hibbs soon after for the remainder of the money agreed to be loaned, and was informed by him of its deposit with Dorrance and of his failure, Hibbs at the same time refusing to pay the amount, insisting that the loss should fall on Chambers. Hibbs, in November, 1868, conveyed the store in controversy to one Charles R. Marxen for the recited consideration of five thousand dollars.

Some time in 1869, Marxen conveyed the property to the appellee Robertson, who was in possession when the bill was filed. The bill charges "that both Marxen and Robertson knew at the time they purchased the store that Hibbs had paid only forty-one hundred and seventy-six dollars therefor." Robertson alone defended, and he denied any knowledge of Chambers' equity.

The chancellor, on the hearing, dismissed the bill, and this decree is now assigned as error.

BOYLES & OVERALL, for appellant.

P. & T. A. HAMILTON, *contra.*—No debt remained from Chambers to Hibbs, and without a debt there can be no mortgage.—36 Ala. 148; 27 Ala. 634; 28 Ala. 226; 12 Ala. 680; 42 Ala. 680; 42 Ala. 32; 2 Edwards' Chy. 147.

STONE, J.—It is unquestionably the law, that parties may

[Haynie, Adm'r, v. Robertson.]

make their own contracts, in their own terms, and compel their performance as made, or recover damages for their breach, unless they infringe some rule of law, or of public policy. When contracting, they may mould the terms to suit their own conveniences and tastes. The law clothes them with power to buy, to sell, to make and receive mortgages, and to make sales, reserving the privilege to repurchase. Courts are guardians of people who are *sui juris*, not for the purpose of pronouncing their contracts wise or unwise, but for the purpose of protecting them in the enjoyment of their legal rights and civil independence. I profess myself no advocate of any dogma, which says to the citizen, laboring under no civil disability, "This form of contract is more advantageous to you than that, and therefore I will strain legal intendments at the expense of your intention, that you may be relieved of the hardships of a bargain you probably intended to make." The intention of contracting parties, gathered from the terms of their contract, must control in its interpretation, if that intention violate no principle of law. If we fall below this standard, we make contracts rather than interpret them.

A mortgage is, in equity, a hypothecation or pledge of property for the security of a debt. There must be a debt, or there can be no security for its payment. Hence it is said, if there is no debt, there can be no mortgage. Debt, in this connection, means a duty or obligation to pay, for the enforcement of which an action will lie. In *McKinstry v. Conly*, 12 Ala. 678, it was said, in effect, that whether a transaction was a mortgage or conditional sale, depended on the inquiry, did the party have a *remedy* for the recovery of the money on a debt? Was there a legal liability which would support an action? And in *Peeples v. Stolla*, at the December term, 1876, we said, "The effect of a mortgage made by one capable in law of executing such contract, is to leave on the mortgagor a personal liability for the residuum of the debt, if, on foreclosure, the property mortgaged fails to yield a sum sufficient to pay it in full. Hence, one of the tests by which to determine whether or not a mortgage was intended, is the existence or not of a debt to uphold it. If there is no debt, there can be no mortgage. On the other hand, security for a debt is incompatible with the idea of a conditional sale."

A mortgagee, it is said, has three remedies, and can prosecute one or all of them. He can sue for the debt, as a debt, can maintain ejectment for the recovery of the premises, and can also maintain a suit in equity to foreclose the mortgage. *Doe, ex dem. v. McCloskey*, 1 Ala. 708. Cumulative authority

that there must be a debt, which will support an action at law, to uphold a mortgage. See also, *Murphy v. Barefield*, 27 Ala. 634; *West v. Hendrix*, 28 Ala. 226; *Swift v. Swift*, 36 Ala. 147; *Beck v. Blue*, 42 Ala. 32; *Robinson v. Farelly*, 16 Ala. 472.

In the present case, it is manifest that Hibbs retained no debt against Chambers. The latter only bargained for the privilege of repurchasing. He was under no legal obligation to do so. Hibbs could maintain no action against him for not paying the money, and could not have foreclosed the contract as a mortgage. The transaction was a sale, with the privilege to repurchase, reserved to the seller.—*Conway v. Alexander*, 7 Cranch, 219; *Flagg v. Mann*, 14 Pick. 467; *Taylor v. Cornelius*, 60 Penn. St. 187; *Weed v. Snow*, 1 Mich. 128; *Knowlton v. Walker*, 13 Wis. 264; *Ruffin v. Womack*, 30 Texas, 332; *Robinson v. Willoughby*, 65 N. C. 520; *Sharkey v. Sharkey*, 47 Mo. 543.

Some authorities are not strictly reconcilable with these views, but we decline to follow them.—See *Heath v. Williams*, 30 Ind. 495; *Dow v. Chamberlain*, 5 McLean, 281; *Pensoncan v. Pulliam*, 47 Ill. 58.

Decree of the Chancellor affirmed.