# Moseley *v.* Moseley.

*Bill in Equity to have Absolute Conveyance declared Mort-
gage, and for Redemption and Account.*

1. *Declaring absolute conveyance to be mortgage, as between grantee and
person for whom money was advanced.*—When the purchaser of land,
being unable to complete the payment of the purchase-money, induces
a third person to advance the money for him, taking a conveyance from
the vendor for a part of the land as security; he can not maintain a bill
in equity to have the conveyance declared a mortgage, and to be let
in to redeem, but his remedy is a bill to compel the execution of the
trust, in the nature of a bill for specific performance.
2. *Parol trust in lands.*—A verbal agreement between the purchaser
of land and a third person, to the effect that the latter, on advancing a
part of the purchase-money due and unpaid, should take an absolute
conveyance from the vendor for a part of the land, and hold it as secu-
rity for the money so advanced, with the reservation of a right to redeem
on the part of the former, is a parol trust in lands, and void under the
statute (Code, § 1845); and a court of equity will not enforce it, in the
absence of fraud in the original transaction.

APPEAL from the Chancery Court of Morgan.
Heard before the Hon. THOMAS COBBS.
The original bill in this case was filed on the 8th Novem-
ber, 1887, by Level Moseley, against Tim Moseley, and
alleged, in substance, that in January, 1885, complainant
bought a town lot in Decatur from M. C. Wade, at the agreed
price of $100, paid part of the purchase-money, entered into
possession, and commenced the erection of valuable improve-
ments; that in February, 1887, being unable to pay the bal-
ance of the purchase-money, he applied to the defendant for
assistance, "and succeeded in making satisfactory arrange-
ments with him to get the money;" that the agreement be-
tween them was, in substance, that the defendant should ad-
vance the unpaid balance of the purchase-money, and should
receive from said Wade a conveyance of one half the lot,
"which was to act as a mortgage and nothing else," and
complainant was to have the right to redeem on repayment
of the money so advanced; that this arrangement was car-

[Moseley v. Moseley.]

ried out, the parties going together to Wade, to whom the
money was paid, and who then executed a deed conveying
one half of the lot to the defendant, and another deed con-
veying the other half to the complainant; that the complain-
ant afterwards tendered to defendant the amount so advanced
for him, with interest, and "was surprised when defend-
ant refused to accept the money, and informed him that he
intended to hold said lot under said deed." The bill alleged,
also, that the lot was a part of the complainant's homestead,
and that he was not bound, "legally or equitably, to refund
said $50 borrowed from said respondent to pay the purchase-
money." The original bill prayed that Wade's deed to the
defendant might be declared null and void, and cancelled
under the decree of the court; that "if complainant is, in the
opinion of the court, bound to refund to respondent the
money borrowed, he may be permitted to do so, and that it
be made a condition in the decree of the court;" and for
other and further relief.

A demurrer to the original bill was interposed, assigning
sixteen special causes or grounds of demurrer; and the de-
murrer was sustained generally. The bill was then amended,
by making a more specific allegation of a tender, and by
praying that the conveyance be declared a mortgage, and
the complainant be let in to redeem. The chancellor over-
ruled a demurrer to the bill as amended, and, on final hear-
ing on pleadings and proof, rendered a decree for the com-
plainant, holding that he was entitled to redeem, and that
the conveyance was intended only as a mortgage. The over-
ruling of the demurrer to the amended bill, and the final
decree, are now assigned as error.

E. W. GOODBEY, and SAYRE, STRINGFELLOW & LeGRAND,
cited *Micou v. Ashurst*, 55 Ala. 607; *West v. Hendrix*,
28 Ala. 226; *Douglass v. Moody*, 80 Ala. 61.

S. T. WERT, and T. N. McCLELLAN, *contra*.

CLOPTON, J.—In January, 1885, appellee purchased of
M. C. Wade a lot of land in the town of Decatur at the price
of one hundred dollars. He paid about one-half of the pur-
chase-money, and, being unable to pay the balance, made an
arrangement with the appellant, about January 1st, 1887,
by which the latter agreed to pay the unpaid purchase-
money, and take a deed from Wade to one-half of the lot.

VOL. LXXXVI.

[Moseley v. Moseley.]

The appellant paid Wade the balance due on the lot, and Wade executed to him a deed absolute in form. At this point the controversy between the parties arises. Appellee contends, that the arrangement was, that appellant should pay the unpaid purchase-money, and take a deed as security for the re-payment of the same; that the deed made by Wade was to operate as a mortgage, and appellant was to convey the property on being repaid. This appellant denies, and asserts that he purchased one-half of the lot absolutely, and that the deed was intended to be indefeasible. Appellee files the bill, which prays that the deed be declared a mortgage, and that he be let in to redeem.

The first question is, what was the nature of the relation between complainant and defendant? The ruling in *Micou v. Ashurst*, 55 Ala. 607, answers this question. In that case, it was held, that where a purchaser of lands, having paid part of the purchase-money, and being unable to make the deferred payments, borrows for that purpose money from a third person, to whom he procures the legal title to be conveyed by his vendor, giving his notes for the money borrowed, and taking from him a bond conditioned to make titles on their payment, the relation between the parties is that of vendor and vendee. The deed made by Wade to defendant was intended to be absolute and indefeasible, not a security for a debt due by the *grantor*. Performance of the condition—the payment of the money advanced—would not enure to his benefit, nor operate to reinvest him with his original estate; and would not have the effect to render the conveyance void, and restore the estate to the grantor, or the legal title to the complainant. In such case, the remedy is not a bill to have the deed declared a mortgage, and to be let in to redeem. When the relation is that of vendor and vendee, the former, having taken and retaining the legal title as security for a debt, holds it in trust for the latter, and his remedy is a bill, in the nature of a bill for specific performance of the contract, to compel the execution of the trust.

Such being the relation between the parties, defeating the right of the complainant to have the deed declared a mortgage, the next question is, will a court of equity enforce the contract, being verbal, and compel an execution of the trust, on tender of the money advanced? This raises the question, whether the agreement falls within the provision of the statute, which declares, "No trust concerning lands, except

[Moseley v. Moseley.]

such as results by implication, or construction of law, or which may be transferred or extinguished by operation of law, can be created, unless by instrument in writing, signed by the party creating or declaring the same, or his agent or attorney lawfully authorized thereunto in writing."—Code, 1886, § 1845. An exception has been engrafted upon the statute, which admits parol evidence to convert into a mortgage a conveyance absolute in form. In *Edwards v. Rogers*, 81 Ala. 568, we declined to commit ourselves to an extension of the exception to cases where there is a verbal agreement between the grantee and a person other than the grantor, that the conveyance shall operate as security for a debt due by such third person to the grantee. As there are no facts alleged or proved on which equity will otherwise create a resulting trust, the trust, if one arises, must come within the class usually denominated trusts *ex maleficio*. It can not be questioned, that generally fraud, imposition or mistake, takes a case without the statute of frauds; the rule being based on the principle, that the statute, intended as a protection against fraud, shall not, in a court of equity, be perverted to its consummation. The application of this principle, which may now be regarded as a maxim, has been carried beyond the first intention by some authorities, in holding that, though no fraud may have been intended or practiced in the procurement of the legal title, a conversion of it to uses or purposes other than contemplated and expressed in the parol agreement, contemporaneous with the execution of the deed, and which was intentionally omitted from it—a mere breach or repudiation of the contract—constitutes a fraud, against which a court of equity will relieve, by compelling restitution, or an execution of the trust. Whatever may be the conflict of authorities, the rule is otherwise established by the decisions of this court.

In *Patton v. Beecher*, 62 Ala. 579, it is said: "When the original transaction is free from the taint of fraud or imposition; when the written contract expresses all the parties intended it should; when the parol agreement, which is sought to be enforced, is intentionally excluded from it; it is difficult to conceive of any ground upon which the imputation of fraud can rest, because of its subsequent violation or repudiation, that would not form a basis for a similar imputation, when any promise or contract is broken. It is an annihilation of the statute, to withdraw a case from its operation, because of such violation or repudiation of an

agreement of trust it declares shall not be made or proved by parol." And in *White v. Farley*, 81 Ala. 563, it is said: "The facts here raise no resulting trust, the lands having been paid for by Beasley with his own, and not with White's money. Nor was the title acquired by contrivance, deceit, or false representation, in such manner as to raise a trust *ex maleficio*, which has been held to be tacitly excepted from the provision of this section of the statute of frauds." The section referred to is the one quoted above. These decisions show, that the rule, as recognized and adopted in this State, is, that the title must be obtained by false and fraudulent promise to hold and use the same for the expressed and agreed uses and purposes, and subsequently converted to other purposes, or claimed by the grantee as his own. Mere subsequent fraud is not sufficient. There must be fraud in the original transaction, which must be of such character as to constitute a fraudulent contrivance for the purpose of acquiring the legal title. Where there is no fraud or imposition in acquiring the title by means of the verbal promise or agreement, equity will not enforce it in contravention of the express declaration of the statute.—2 Pom. Eq. Jur. §§ 1055-1056; Browne on Stat. Frauds, 101.

If a trust exists, it is created by a parol agreement. The bill does not aver, nor does the evidence show, that the deed was obtained from Wade by any deceit, contrivance, or false representation, or that any fraud was intended or practiced in making the agreement. On the contrary, the bill avers, that the complainant applied to the defendant to advance the money, and agreed to have the deed executed to him without any act or promise on his part, other than that it should stand as security for the repayment of the money advanced. The parol agreement clearly falls within the provisions of section 1845. It may work a hardship, but a court of equity can not enforce the contract without an abrogation of the statute of frauds.

Reversed, and a decree will be here rendered dismissing the bill.

Reversed and rendered.