(122 So. 16)

POLLAK et al. v. MILLSAP et al.
(6 Div. 129.)

Supreme Court of Alabama. Nov. 15, 1928.

As Modified; on Denial of Rehearing, Feb. 2, 1929.

Further Rehearing Denied May 2, 1929.

274

Cabaniss, Johnston, Cocke & Cabaniss, of Birmingham, for appellants.

Jerone Edmundson and C. C. & Morton Nesmith, all of Birmingham, and A. J. Harris, of Decatur, for appellees.

FOSTER, J. Appellants filed a bill to effect the equity of redemption of property alleged to be subject to an equitable mortgage. The trial court sustained demurrer to the bill, and dismissed it for want of equity.

The facts which appellants claim create such an equitable mortgage are alleged in substance as follows:

They borrowed money from one Kirtley, and executed a mortgage on the land involved in this suit to secure the debt. The debt was not paid when due, and the mortgage was foreclosed, the mortgagee being the purchaser. A few days before the expiration of two years in which to redeem, appellants borrowed, from Judge Joel B. Brown, the amount necessary to effect such redemption, and executed a note to secure him, due twelve months after date, which recited the foreclosure of the mortgage, and that the purpose of the loan was to redeem the property, and that, as security for the debt to Judge Brown, there was deposited in the bank in escrow a deed from the purchaser to him and E. C. Kinney, one of the appellees, to be held by the bank "until the debt is paid," and upon failure to pay the debt at maturity, to deliver same to the grantee. The deed was executed and delivered in escrow. Judge Brown conveyed to appellee Kinney, by deed dated the day before the date of the former deed. When the debt matured it was not paid, but the bill alleges that on the next day appellants tendered the amount of the note to the bank, which was refused, alleging a delivery of the deed; that appellants then made demand upon said Kinney for redemption, and offered to pay him the amount of the note and accrued interest, which he declined, and claimed that appellants had lost the right of redemption; that said Kinney has conveyed the land to appellee Millsap for a consideration equal to many times the amount of the debt; that said Millsap "had actual notice, or was charged with notice" of appellants' rights in the premises. They offer to do equity, and pray that the transaction with Brown be held an equitable mortgage; and that, upon appellants doing equity, the property be conveyed to them; and for general relief.

The respondents, Kinney and Millsap, separately demurred for want of equity, and that the charge of notice was the conclusion of the pleader without a statement of the facts.

■ As to Kinney, we think that being a grantee in the deed with Judge Brown, notice is sufficiently shown by that fact.

■■ The allegation of notice as to Millsap is not sufficient. This court has held insufficient such an allegation as made in the bill. Bank of Luverne v. Birmingham F. Co., 143 Ala. 153, 39 So. 126. In that case the allegation was that the bank "was charged with notice of the trust." It was held that, with such averment, the bill was without equity, and the cause reversed, and decree rendered dismissing it. The bill in the instant case alleges that Millsap paid only part cash and that the balance of the purchase price of $11,000 was deferred and secured by a mortgage on the property, one installment not due until after the bill was filed. As to said amount of deferred payment unpaid when the bill was filed, Millsap is not an innocent purchaser, and his equities may be adjusted, upon full relief being granted by the court below.

■ The chief argument of counsel is based upon the contention of appellees that the transaction between appellants and Judge Brown was not an equitable mortgage, nor a trust in the nature of such mortgage, but was, in effect, a conditional sale, and the condition not having been complied with, the rights of appellants terminated with such breach; whereas appellants contend that it was an equitable mortgage, or a trust in the nature thereof, and subject to the equity of redemption not barred by a failure to pay the debt at maturity. This question is fully discussed in briefs of counsel. There have been several cases in Alabama on the subject, and principles which govern the question seem to be settled. The authorities which upon first view seem to support appellees are Downing v. Woodstock Iron Co., 93 Ala. 262, 9 So. 177; Moseley v. Moseley, 86 Ala. 289, 5 So. 732; Micou v. Ashurst, 55 Ala. 607. An examination of these cases will show they do not apply to the facts of this case.

In the Downing Case, supra, the facts made by the bill are substantially, in effect, the facts upon which the equity of this bill is founded, except that there was no writing showing the relation of the parties. The bill in that case alleged that Downing (having the right of redemption) borrowed the money from the Woodstock company, which, to secure the payment, took a deed, and agreed to give Downing all the time he wanted. The bill was filed eleven years thereafter to redeem. The court in that case did not hold that the bill did not have equity, but held that the proof did not sustain the allegations, and did not prove a loan of money to be secured by a deed as a mortgage, but that the agreement was that Downing should have two years in which to redeem it. The opinion, however, does conclude that it would seem that though the testimony should prove the allegations, complainant was not entitled to relief as Downing had no title to mortgage, and quotes Judge Brickell as holding that under such circumstances it is not a mortgage, but may be a trust.

In the case of Moseley v. Moseley, supra, appellee purchased a lot, and paid one half the purchase price, and made an arrangement with appellant to pay the balance, and take a deed from the seller. He did so and took the deed. Appellee contended that the deed was to secure repayment, and sought a redemption. Appellant contended it was an absolute sale. The court quotes from Micou v. Ashurst, supra. It was held that appellee did not execute a deed as a mortgage; that the repayment of the debt would not revest the title in appellee, for he had no title to revest; and that the deed was not made as security for a debt of the grantor therein, and should not be held to be a mortgage; but the remedy was for specific performance in the nature of a trust, but that, the transaction being in parol, the court would not enforce it as a trust, and the bill did not show the elements of a constructive trust, there being no fraud or wrongdoing alleged. The case of Micou v. Ashurst, supra, written by Chief Justice Brickell, is to the same effect. This principle is approved in Parmer v. Parmer, 88 Ala. 545, 7 So. 657; Butts v. Cooper, 152 Ala. 375, 44 So. 616.

The Downing Case, supra, also emphasizes the fact that the party complaining had no property which passed by the transaction, and which is essential to a mortgage, whereas in the Parmer Case, supra, he had a perfect equity. It is also said that, his only right being a statutory right of redemption, it was not property and not subject to sale and transfer. Such right is now assignable, and was so when this transaction occurred. Sec. 5746, Code of 1907. Whether such right being thereby made assignable created an interest in the property so as to bring it within the principle mentioned in the Parmer Case, supra is not necessary to decide at this time

It must be remembered that appellants executed a note to Judge Brown for a definite sum due at a fixed date, and expressly secured it by a deposit of the deed in the bank in escrow. The transaction was in writing as alleged.

In the case of Hall v. M. & M. R. Co., 58 Ala. 10, the court adopts the following language from Jones on Mortgages: "There are as many kinds of equitable mortgages, as there are varieties of ways in which parties may contract for security, by pledging some interest in lands. Whatever the form of the contract may be, if it is intended thereby to create a security, it is an equitable mortgage"— unless it is a legal one. This language is quoted in Woodruff v. Adair, 131 Ala. 530, 545, 32 So. 515, 519, with the additional state-

ment that "if the transaction resolve itself into a security, whatever * * * be its form, it is in equity a mortgage."

Another early and leading case on the subject is Newlin v. McAfee, 64 Ala. 357, written by Chief Justice Brickell. It is said: "The form of the agreement is not material; operative words of conveyance are not essential to the creation of a charge, or trust, which a court of equity will enforce as a mortgage. It is the intention of the parties to charge particular property, rights of property, or credits, with the payment of debts, which the court will regard. When that intention is deducible from their agreement, the court will give effect to it." This is quoted with approval in the case of Lewis v. Davis, 198 Ala. 81, 85, 73 So. 419, 421.

In the case of Nelson v. Kelly, 91 Ala. 569, 8 So. 690, in an opinion by Judge Clopton, the court states the principles as applicable, when the owner of a lot had allowed it to be sold for taxes, and applied to complainant to advance the money, which he did, taking a conveyance of the lot. The tax sale was void, and complainant took no title from the tax purchaser. On his bill the court held the owner estopped to deny the title so acquired by complainant, but as the owner had an interest in it, the transaction was held an equitable mortgage. The court makes the following comment:

"Notwithstanding, by the terms of the contract, the lot was to become the absolute property of the complainant, in case of default in repayment of the sum advanced during the current year, the requirements of equity do not extend so far. It may be said generally, that when a person, having the legal or equitable title to property, procures another to make an advance upon it and take a conveyance, either from the debtor or another, under an agreement that he shall have the property upon repaying the money advanced, the transaction will, in equity, constitute a mortgage. In such case, the party making the advance acquires title to be held as security. Parmer v. Parmer, 88 Ala. 545 [7 So. 657]. As complainant acquired no title, interest or estate, legal or equitable, by the mere operation of the conveyance from Freeman, who had none to convey, the transaction can not be regarded strictly a mortgage. Nevertheless, by the co-operative effect of the conveyance and the inducement and agreement under which it was procured, he acquired a claim or right to hold the conveyance as security, which the defendants will not be permitted to defeat by the assertion of their legal title. Such transaction so far partakes of the nature of an equitable lien or mortgage, that equity will not specifically enforce the stipulation that the lot shall become the absolute property of complainant, but will allow defendants the right to redeem. In such case, the court will observe and apply, by analogy, the principle, that a mortgage being an instrument of se-

curity, the equity of redemption cannot be waived or abandoned by any contemporaneous stipulation of the parties. Peugh v. Davis, 96 U. S. 332 [24 L. Ed. 775]; Fields v. Helms, 82 Ala. 449 [3 So. 106]."

The fact that the security was the deposit of a deed in escrow, and not the immediate vesting of the title, does not destroy the transaction as being a trust in the nature of an equitable mortgage. That was but a method of attempting to abridge the equity of redemption by a contemporaneous transaction. The debtor cannot divest himself of the equity of redemption by any stipulation, or in any manner contemporaneously with the creation of the relation of debtor and creditor. Nelson v. Kelly, supra, page 575, of 91 Ala.; Fields v. Helms, 82 Ala. 449, 3 So. 106.

In the recent case of Moss v. Winston (Ala.) 118 So. 739,[1] the facts were that the alleged lender of money had agreed with the borrower that he would advance the money for the redemption of land and take the title in the name of the borrower, but that he violated that agreement to the extent that he took title in his own name, and it was held that a resulting trust in favor of the borrower followed. The opinion is based upon the following cases: Bates v. Kelly, 80 Ala. 142; Hodges v. Verner, 100 Ala. 612, 615, 13 So. 679; Milner v. Stanford, 102 Ala. 277, 280, 14 So. 644; Jordan v. Garner, 101 Ala. 411, 13 So. 678. These cases seem to be in conflict with Moseley v. Moseley, supra, and Hughes v. Letcher, 168 Ala. 314, 52 So. 914, as to the nature of the trust growing out of such a situation.

In order to establish a resulting trust, certainly the complainant, claiming the trust, must have furnished the funds for the purchase. The theory of the cases last cited is that when complainant procures a loan of the funds from respondent, such funds belong to complainant, although provided by respondent; and that when title is taken in respondent as security for the loan, the respondent is held to receive the title in trust, and as complainant provided the funds it is a resulting trust in the nature of a mortgage, and the statute of frauds does not apply. We are of the opinion that such theory of a resulting trust is the correct one, notwithstanding the statements to the contrary as expressed in the cases of Moseley v. Moseley, supra, and Hughes v. Letcher, supra, and they are to that extent here modified.

The note expressly stipulates that the deed is security for the debt. This means that the title represented by the deed shall be so regarded. If it is not in legal effect an equitable mortgage, because the debtor did not own the property or a mortgagable interest in it, and payment of the debt could not revest the title in the debtor, this court will decree as it has consistently asserted that relief may be had in equity as for the enforce-

---

[1] 218 Ala. 364.

ment of a trust in the nature of an equitable mortgage when not violative of the statute of frauds. The case of Waller v. Jones, 107 Ala. 331, 341, 18 So. 277, is not directly in point because confidential relations existed between the parties.

The relation of the parties is fully shown by the note given to the grantee, and delivered along with the deed or prior thereto. It shows that the deed was taken as security for a debt for borrowed money.

The borrower had a right of redemption which was a valuable right. The effect was to create a new relation between appellants and Judge Brown, to wit, the creation of a new debt with a new security, the right to redeem from which could not be abridged by contemporaneous agreements; and all was free from the statute of frauds. The relief sought by complainants, specifically set forth in the prayer, is consistent with their equitable rights.

■ They offer to do equity, upon which they seek a conveyance of the property, and general relief. This was sufficient as a prayer for the declaration of a trust in the nature of an equitable mortgage, whether so phrased or not. The phraseology is immaterial. Appropriate relief was available on the facts resulting from the general prayer, if the special prayer was not exactly appropriate.

We hold the bill should not have been dismissed on demurrer, and the cause is reversed and remanded.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

### On Rehearing.

FOSTER, J. ■ It is urged that the court has not properly interpreted the transaction, but that it is in effect a conditional sale, and that complainant had in reality only an option, or right to pay the note and take up the deed. Surely we agree that upon that question the whole case hinges. It is well stated so to be the rule in 41 Corpus Juris, 297, as follows:

"When property has been sold at a judicial sale, and a stranger, at the request of the debtor, advances the money necessary to effect a redemption from such sale, taking to himself an assignment of the sheriff's deed or certificate of purchase, with an agreement to convey the property back to the debtor on being reimbursed for the amount of his advances, if the parties meant to treat the advance made by the stranger as a loan to the debtor, and intended that he should hold the land simply for security for the payment of the debt thus created, it will be regarded and treated in equity as a mortgage of the land; but if the arrangement between the parties does not create the relation of debtor and creditor, but leaves it optional with the original owner to repay the stranger advances or not, it is merely a sale with a right of repurchase." 41 Corpus Juris, § 39, p. 297.

"If a person who has contracted for the purchase of land procures another to lend him the money necessary to make the payments, or to advance it to him, and has the deed made to the latter, with an agreement that he will convey the title to the former on repayment of the amount advanced, the transaction will amount to an equitable mortgage if it was the understanding and intention of the parties that the one should become debtor to the other for the money advanced, and that the land should be held merely as security for this debt. If this was their contract, the form in which they may have cast the agreement is immaterial. It is not necessary that the agreement to reconvey should be under seal, or even that it should be in writing; a mere oral agreement will be sufficient in equity, if fully established; but one having no interest in land, legal or equitable, at the time a deed was executed by the owner to a third party, cannot assert the rights of a mortgagor therein against the grantee, solely by virtue of an oral agreement made by the grantee to convey the land to him upon payment of a certain sum. While it is necessary, as stated, that the transaction should be intended as a security for a debt or loan, no promise or personal covenant on the part of the borrower to repay the money is required to make it a mortgage in equity. * * * The question of the intention of the parties, if not undisputably established by the face of the papers, is one of fact, which must be determined on the testimony of witnesses and evidence of pertinent circumstances. And if it thus appears that there was no design to pledge the land as security for a loan, but merely that the person who advanced the money to make the purchase should take the title absolutely in himself, with an option or privilege to the original purchaser to acquire the title, or to take the property off the other's hands, within a limited time, on paying a certain amount of money, then the transaction is not a mortgage of the land, as in that case an essential element of mortgages is lacking, namely, a debt or obligation to be secured." 41 Corpus Juris, § 40, pp. 297, 298.

The notes in Corpus Juris, supra, cite our Alabama cases and many others in support of the conclusion. We have shown that the Alabama cases support that conclusion. If all the facts show an option to purchase merely, it will not be treated as a mortgage. ■ The bill of complaint distinctly alleges: "Complainants borrowed the sum of $3,526.00 either through or from Joel B. Brown," and evidenced the transaction by the execution of a note. The note copied shows an unconditional promise to pay money, with interest until paid, and costs of collection, and an at-

torney's fee, with a waiver of exemption, and recites that for the purpose of securing this indebtedness a deed is to be deposited in the bank, to be held by the bank until the debt is paid; if not paid at maturity, the bank is authorized to deliver the deed to the grantee. The bill further says that the transaction was a mortgage securing the loan of money. The bill was dismissed for want of equity. If there was a loan of money, secured by a deposit in the bank of the deed executed to the lender, our cases all hold the transaction enforceable as a trust in the nature of a mortgage. Can complainant prove those allegations of a loan creating an unconditional debt? If so, the case is well supported. It is not now a case of proof, but of averment.

Another Alabama case very much in point is Hughes v McKenzie, 101 Ala. 415, 13 So. 609. In that case complainant had purchased land and taken a bond for title. The price was $1,000. He paid $600, and borrowed $400 from defendant, and executed his note to him, and the seller executed an unconditional conveyance to defendant. Complainant alleged that the deed was security for the debt, and sought to redeem. The court used the following language:

"From a careful review of the evidence, we ascertain that the relation of debtor and creditor did not exist between the complainant and defendant prior to the transaction we consider; that it began in a negotiation for a loan from the defendant to the complainant; that the negotiation ended in defendant advancing for complainant to Boswell the sum of $400, for which complainant executed his note to defendant for $480, payable on October 1, 1885; that said note has been from that date to this a continuing debt in the hands of defendant against the complainant, on which he has been, and is liable to suit; that Boswell had no negotiation with defendant for the land, but executed his deed to him by the direction of complainant, in consideration of the payment by defendant for complainant of the balance due on the land; that the land was sold in the beginning, and was conveyed for $1,000, and that $400, the sum defendant says he paid as a consideration for his conveyance, is in great disproportion to its real value. After this, if any doubt remained as to the character of the transaction, we would resolve it in favor of its being a security or equitable mortgage for a loan. Daniels v. Lowery, 92 Ala. 521, 8 So. 352; Knaus v. Dreher, 84 Ala. 320, 4 So. 287; Vincent v. Walker, 86 Ala. 333, 5 So. 465; Turner v. Wilkinson, 72 Ala. 366.

"The defendant does not deny that complainant procured him to pay the balance due by himself on the land to Boswell, and, according to his account of the transaction, the agreement was that, if complainant repaid the $480 in 12 months, he should have the property. Such a transaction is construed in equity to be a mortgage and not a conditional sale. Nelson v. Kelly, 91 Ala. 574, 8 So. 690."

In that case it was upon allegation and proof on final decree. The court refers to the fact that there was no evidence that defendant negotiated for a purchase of the land, but that it originated in a loan. Defendant, however, contended, as here, that complainant only had an option to purchase. But the court held that the transaction should be construed in equity as a mortgage, and not a conditional sale.

This court cannot say that the transaction was a conditional sale, when the bill alleges otherwise, and there is nothing in the bill inconsistent with that allegation. What will the proof show, that is not now before us? The allegations fully state the essentials of a right of recovery, if they are proven. The true inquiry is stated as follows in Knaus v. Dreher, 84 Ala. 319, 320, 4 So. 287, 288:

"There is an additional element which enters into such inquiry. To establish the proposition that the conveyance, absolute in form, was in intention and in fact only a mortgage —security, there must be a continuing binding debt from the mortgagor to the mortgagee to uphold it; a debt in its fullest sense. Not a mere privilege reserved in the grantor to pay or not at his election, but a debt which the grantee can enforce as a debt, and for its collection may foreclose the conveyance as a mortgage. Where there is no debt, there can be no mortgage; for if there is nothing to secure, there can be no security. Eiland v. Radford, 7 Ala. 724 [42 Am. Dec. 610]; West v. Hendrix, 28 Ala. 226; Swift v. Swift, 36 Ala. 147; Peoples v. Stolla, 57 Ala. 53; Haynie v. Robertson, 58 Ala. 37; Logwood v. Hussey, 60 Ala. 417; Douglass v. Moody, 80 Ala. 61; Perdue v. Bell, 83 Ala. 396 [3 So. 698]; 1 Jones on Mort. § 267."

 If there is a debt for borrowed money, for which the creditor may sue, and the title of the land was made security for that debt it is a mortgage—either an equitable mortgage, or a trust in the nature of such, as herein explained. If there is no debt, but only an option, there is no mortgage, nor trust in the nature thereof. As above stated in Hughes v. McKenzie, all doubts are resolved in favor of it being a mortgage, and not a conditional sale. But the question of doubt is not here involved, because it is here one of positive averment. When there is such a positive averment, we may not indulge the contrary presumption to dismiss the bill, when the written instruments are consistent with such allegations.

It follows that, if complainants can prove their allegations, they are entitled to relief.

The case of Glendenning v. Johnston et al., 33 Wis. 347, is cited by appellees. That was a case heard on the pleadings and proof. The

alleged borrower, after there was default in the payment of the alleged debt, directed a delivery of the papers to the defendant. The voluntary act of plaintiff in causing a surrender of the papers is emphasized in the opinion. It is said:

Such default and voluntary surrender amounted to a complete cancellation of the defeasance, and left the conveyance to take effect on delivery as an absolute conveyance."

It is also said that the transaction is this: "The Johnstons advanced a sum of money for the use and benefit of the plaintiff. *It was agreed between them that such advance*, if repaid in 30 days, should be a loan, but, if not repaid in that time, it should be the consideration for an absolute conveyance of the land in question. For that period it was *optional with the plaintiff* to make the transaction either a loan of money or an absolute purchase and sale of land. By failing to repay the money he elected that the transaction should become a valid, executory contract for an absolute sale of the land, which was fully consummated by the delivery of the deed. Until the plaintiff made default, the character of the conveyance held by Hobkirk was undetermined. The plaintiff might have rendered it a mortgage, but he failed to do so; and hence, upon being duly delivered to the grantees named in it, it conveyed to them the title which it purports to convey, to wit, an absolute, unconditional title to the land in controversy."

In the case we are considering the allegations of the bill show no optional right but an unconditional promise to pay a debt for borrowed money. The bases of the above decision are that (1) *by the agreement* the alleged debtor had an option, and (2) after the debt became due he "voluntarily directed its [the deed's] delivery." It is also said: "In this case the defeasance was reduced to writing, signed by the parties, and deposited in escrow, and the *plaintiff voluntarily directed that it be surrendered* to the Johnstons, which surrender, as before observed, canceled it." It was also said that what would have been a contract for defeasance "was, by the default and the *voluntary act of the plaintiff*, entirely annulled." On the other hand, in a later case in Wisconsin, Beebe v. Wis. L. Co., 117 Wis. 328, 93 N. W. 1103, the rule we have asserted is applied, and it is there said: "A transfer of property as security, regardless of the form thereof, is a mortgage." Likewise the same court held a transaction was enforceable where a holder of a contract to convey procured another to advance the money and took a deed, though there was no other writing. The court made such creditor stand by his contract on the doctrine of estoppel, and cited the quotation from Cyc. (now Corpus Juris) which we have cited above. To the same effect is Hoile v. Bailey, 58 Wis. 434, 17 N. W. 322.

None of the cases cited conflict with our holding, in the light of the allegations of the bill we have before us.

In 2 L. R. A. (N. S.) 628, there is a note on the subject of the effect of a deposit in escrow by a debtor of a deed, to be delivered upon default in the payment of a stipulated sum. The result reached is that, if the deed is executed and delivered in escrow as a part of the transaction of *borrowing money*, it is in effect an effort to cut off the equity of redemption by a contemporaneous transaction; but if the deed is so delivered in escrow by a subsequent transaction after the loan is effected, it thereby cuts off such redemption. This may be done by a bona fide subsequent transaction, but not a contemporaneous one.

In the case of First Nat. Bank v. Sargeant, 65 Neb. 594, 91 N. W. 595, 69 L. R. A. 296, it was held that, when a deed is given to secure a debt, although the parties agree that upon default of payment the deed shall become absolute, it is nevertheless a mortgage in equity and subject to redemption. To the same effect is State Bank of O'Neill v. Mathews, 45 Neb. 659, 63 N. W. 930, 50 Am. St. Rep. 565.

The case of Bodwell v. Webster, 13 Pick. (Mass.) 411, is different from the one at bar. In that case the court distinctly stated that the question of the delivery of the defeasance, constituting the deed a mortgage, depended upon a contingency. The bill here alleged to the contrary of that, but that there was a debt (nothing else) secured by the deed.

It is also insisted that the fact of deferred payments in the case of Millsap is not sufficient as an equivalent of notice to him to that extent, because the note may be negotiable and may be negotiated for value, and held by an innocent purchaser, and that thereby Millsap is bound to pay it. There is no fact alleged from which such implication may be drawn. The court will not indulge in such speculation. If a condition of that nature exists, it should be set up in the answer. We hold the grounds of demurrer as to notice were not good, for that Kenney was an original party to the transaction and cannot be an innocent purchaser, and the bill shows that the purchase money had not all been paid by Millsap, and therefore, to that extent, he is not an innocent purchaser. If any circumstance exists to militate against such a result, it is not shown in the bill. The bill need not negative vague speculations.

It follows that the application for a rehearing should be, and is, denied.

SAYRE and GARDNER, JJ., concur.

BOULDIN, J. I concur in the opinion, but would not be understood as agreeing that parol evidence may be received to the effect that the transaction was a mere option to reclaim the land at the maturity of the note.

The writing does not provide for any cancellation of the debt or surrender of the note on delivery of the deed. If it were silent as to this, it might be open to parol evidence. But it is not silent. The same writing expressly declares that after maturity, after the date for delivery of the deed under the contract, suit may be brought on the note, and the maker will pay the plaintiff's attorney's fees. No suit could be brought until after the date named for the delivery of the deed.

I therefore reserve for future inquiry any question of the right to vary these provisions by parol—a matter which is not discussed in the opinion.

ANDERSON, C. J. (dissenting): I think that, while the note, as set out in the bill, carries a debt from the complainants to Brown, the further provision, as incorporated therein, manifested a clear intention that the debt was to be canceled and satisfied by the delivery of the deed, which was held by the bank in *escrow*. The deed was so delivered, and Brown clearly has no right to pursue the complainants for the debt, or any part thereof. This being the case, the transaction was a conditional sale, pure and simple, and the title vested in Brown, or his assignee, when the deed was delivered.

THOMAS, J., concurs in the foregoing dissent.