# Woodruff *v.* Adair *et al.*

*Bill in Equity to cancel Deed as Cloud upon Title.*

1. *Motion to dismiss cross bill for want of equity; must be considered without regard to answer or proof.*—On motion to dismiss a cross bill for the want of equity, all the statements in said cross bill are admitted to be true, and in passing upon said motion the chancellor is not authorized, nor is the Supreme Court in reviewing his ruling authorized, to consider the averments of the answer to said cross bill, and the evidence in the original cause; but the motion is to be determined upon an inspection of the cross bill itself in its relation to the original bill.

2. *Mortgages; rights of assignee.*—The assignment by a mortgagee of a mortgage and the debt secured thereby, invests in the assignee the power to foreclose the mortgage is equity, or to sell the property under the power contained in the mortgage, as fully as the mortgagee could have done.

3. *Same; effect of purchase by mortgagee without being authorized thereto.*—The purchase by a mortgagee or his assignee at a sale under the power contained in a mortgage, the authority

[Woodruff v. Adair *et al.*]

so to do not being conferred by the mortgage, does not make said sale void but voidable only "at the option of the mortgagor or one claiming under him in privity, exercised within two years; but as to all other parties, such sale is valid.

4. *Same; effect of sale under power.*—Where a mortgage is regularly foreclosed under the power of sale contained therein, and the mortgagee, being authorized so to do, purchases the mortgaged property, such sale operates as a foreclosure and cuts off the equity of redemption, although the mortgagee purchaser did not receive a deed but merely a certificate from the auctioneer.

5. *Same; right of assignee who purchases at foreclosure sale.* Where a mortgage giving the mortgagee the right to purchase at the foreclosure sale is assigned, and at the sale under the power the assignee becomes the purchaser, and while he receives no deed he is given a certificate of purchase, by the auctioneer, such assignee, as purchaser, although he can not maintain an action of ejectment, can maintain a bill for specific performance, against his assignor, the mortgagee, and compel said mortgagee to convey the title to the lands purchased at the foreclosure sale to him.

6. *Assignment of mortgage; when constitutes equitable mortgage or lien.*—Where, after the regular foreclosure of a mortgage, under a power of sale contained therein, at which sale the holder of the mortgage being authorized thereto became the purchaser, and does not receive a deed but merely a certificate of purchase from the auctioneer, and such purchaser, as collateral security for his debt assigns by endorsement the mortgage and notes and the certificate of purchase, the assignee thereby acquires an equitable mortgage lien which can be enforced in a court of equity.

7. *Equitable lien; when it does not arise from deposit of title deed.*—A lien which arises from the transfer of a security of a debt presently contracted, is not a lien arising out of deposit of title deeds, but is valid and enforceable.

8. *Escrow; what necessary to constitute it.*—To constitute an escrow, the grantor must have surrendered control over the deed or other written instrument, and the delivery of the deed or written instrument to a party to such instrument does not come within the meaning of an escrow; since there must be a delivery by the grantors to a third person who is not a party to the instrument.

APPEAL from the City Court of Talladega, in Equity. Heard before the Hon. G. K. MILLER.

The original bill in.this case was filed on November 20, 1896, by Mary J. Adair, and as amended it made parties defendant Mrs. T. S. Phillips and her husband, H. W. Phillips, John W. Ryder, Mrs. Sarah E. Woodruff, and M. L. Smith, and E. J. Smith, individuals and as partners under the firm name of Smith Bros.

It was averred in the original bill that the complainant, Mary J. Adair, owned an interest in certain specifically described lands; that she acquired this interest under and by virtue of the fact that her deceased husband owned the same at the time of his death, and that said property, being the homestead of her said husband, was duly set apart to her and three minor children as exempt from levy and sale under regular orders of the probate court, and that since said property was so set apart she had been in the continuous possession thereof; that her interest was one-fifth interest in fee simple in said property or a life estate in the whole of the same; that while in possession of said property the complainant, together with one John T. Adair, who had purchased all the other outstanding interest in said property, negotiated a sale thereof to M. L. and E. J. Smith, doing business under the name of Smith Bros.; that in conformity with said contract of sale, the complainant and John T. Adair signed a deed to said Smith Bros. on June 20, 1892, which was placed in escrow pending the investigation of the title to the property of Smith Bros., it being understood that Smith Bros. would not take the property unless the title was found to be acceptable to them; that said deed was delivered by the complainant to said John T. Adair; that as the result of the investigation Smith Bros. found the title to the property unsatisfactory, and, therefore, declined to purchase the same, and hence said sale was not consummated, and there was never any sale on complainant's part of any portion of said property to said Smith Bros. or any one else, and the title to said property was not passed under and by virtue of said deed; that said deed was never returned to the complainant, but remained in the possession of John T. Adair and H. W. Phillips; that said J. T. Adair at the instance of H. W. Phillips turned said

deed over to said Phillips and he filed the same for record and said deed was recorded without any authority from the complainant, and without said deed ever having been delivered to said Smith Bros.; and that the filing of said deed for record was without the knowledge or consent of the complainant; that subsequently by the procurement of H. W. Phillips, Smith Bros. executed a quit claim deed to said lands to John T. Adair; that after receiving said quit claim deed, John T. Adair, on October 26, 1893, executed a warranty deed to D. E. Brasher and Henrietta Brasher, conveying the above described lands in fee simple to said parties; that said D. E. and Henrietta Brasher took said lands with full notice of the fact that the complainant had an interest in said property as above set forth, and also with notice that the deed to Smith Bros. had never been delivered; that afterwards on November 1, 1893, D. E. Brasher and Henrietta Brasher executed a mortgage on said property to Mrs. T. S. Phillips, the wife of H. W. Phillips; that Mrs. Phillips took said mortgage with notice of the fact that said deed from the complainant to Smith Bros. had never been delivered, and, therefore, conveyed no title.

It was then further averred that one J. W. Ryder claimed an interest in said mortgage, which was executed by D. E. and Henrietta Brasher to Mrs. T. S. Phillips, by transfer or assignment thereof from Mrs. Phillips; that complainant is not informed as to what interest said Ryder has or claims in said property or mortgage, but that if he has any interest in the same, he took it with full notice and knowledge of the facts stated as to said deed from complainants to Smith Bros. never having been delivered. It was then averred in the bill that Mrs. S. E. Woodruff claims an interest to said property by and through said John W. Ryder, by reason of a transfer made to her by said Ryder of said mortgage, but that said transfer was invalid and was taken with full notice and knowledge of the interest of the complainant in said property, and that said deed to Smith Bros. was in fact, never delivered.

The prayer of the bill was that the interest of the

complainant in said property be decreed and that each
of said several conveyances be delivered up and cancelled
and annulled as a cloud upon complainant's title.

Mrs. T. S. Phillips and her husband, H. W. Phillips,
filed an answer, which was made a cross bill, and Mrs.
Sarah E. Woodruff also filed an answer and cross bill.
The cross bill of Mrs. Phillips does not antagonize the
limited interest claimed by the complainant in the
orginal bill; but alleges that the Adair mortgage was
executed to Mrs. Phillips to secure the *bona fide* debt
therein mentioned, and the same with reference to the
Brasher mortgage. And further, that while she was
the owner and holder of the two mortgages and the
notes secured thereby, she borrowed $200 from the said
Ryder and that she and her husband executed to him a
note under seal therefor, and to secure that principal
note of $200 she, her husband joining to accomplish the
transfer, in writing, assigned the Adair notes and mort-
gage, and the Brasher notes and mortgage to said Ryder
as collateral security merely; and that on the 10th day
of December, 1894, in pursuance of the powers of sale
contained in the respective mortgages, said Ryder fore-
closed them, bought himself at the sales and written
memoranda of the sales were made. He bid in the Adair
lands at the price of $700, and the Brasher lands at the
price of $985.60. He paid no money. Before the sale
was made, and in the making of the sale, it was agreed
between him and Mrs. Phillips that he might so pur-
chase the lands under the mortgages without paying
anything and that the amounts so bid by him should go
towards discharging the respective mortgage debts, and
that his purchase of the property should be for, and on
account of the mortgagee, Mrs. T. S. Phillips, and that
the title should be kept in his name as security, merely,
for the $200 which she owed, but had not yet paid him.
In carrying out this agreement, made concerning the
foreclosure and purchase by Ryder, Mrs. Phillips after-
wards paid Ryder the $200 which she owed him, took
up her principal note under seal of $200, and Ryder and
his wife, in consideration thereof, and as previously
agreed, executed to her a deed, on the 5th day of Febru-

ary, 1897, conveying to her the lands embraced in both mortgages.

The prayer of the cross bill of Mrs. T. S. Phillips and H. W. Phillips was that it be decreed that Mrs. T. S. Phillips owns all of said lands in fee simple subject only to the life estate of the complainant in the original bill, Mrs. Mary J. Adair. It was averred in the cross bill of Mrs. S. E. Woodruff that on October 26, 1893, John T. Adair being seized and possessed of certain lands conveyed the same by deed of mortgage for a valuable consideration to Mrs. T. S. Phillips; that on November 1, 1893, David E. Brasher and Henrietta Brasher being seized and possessed of the lands described in the original bill conveyed the same by deed of mortgage to Mrs. T. W. Phillips to secure the indebtedness; that on the 16th day of December, 1893, before any of the notes secured by said mortgage matured and before the law day of either had arrived, the said Mrs. T. S. Phillips, who was then the owner and holder of both of said mortgages and of the notes described therein, did, for a valuable consideration then paid to her, and being joined therein by her husband, transfer in writing to the defendant, Jesse W. Ryder, both of said mortgages and the notes therein described and thereby secured; that said transfers were made at the same time and constituted but one and the same transaction and are endorsed on said mortgages. It was then further averred in the cross bill of Mrs. Woodruff that the payers of said note, who were the mortgagors, did not pay said debts when the same fell due, but made default therein; that thereupon said J. W. Ryder, who then held and owned said mortgages and the debts thereby secured, in strict conformity to the power of sale contained in said mortgages, sold the same at public sale, and at said sale said Ryder became the purchaser of both said tracts of land for a valuable consideration, and had a written memorandum of said sales made by the person conducting the same; that by so purchasing at said sale Ryder acquired the legal estate vested in the mortgagee and the equity of redemption residing in the mortgagors and was entitled in a court of chancery to have said sales confirmed and

all title to said lands divested out of any one of said persons and a perfect title thereto vested in him, subject only to the statutory right of redemption residing in the mortgagors.

It was then further averred in said cross bill that after said Ryder became the owner of all of said lands as just above set forth, he, for a valuable consideration, paid by the cross complainant, did, on January 21, 1895, transfer to her, Mrs. Woodruff, all of his right, title and interest in and to said lands, by delivering to her as collateral security a note given to her on said deed, all of said mortgages, notes and memoranda of sale made by the person conducting the sale; that said Ryder did not pay his said note at maturity, and the whole amount thereof with interest is still due to the cross complainant, Mrs. Woodruff; that in and by this transaction with said Ryder, the complaiannt "acquired all the rights that he had in and to all of said lands, and especially the rights to have said sales confirmed in equity after the lapse of two years from said sale; and the mortgagors in said mortgages not having offered to redeem nor redeemed said lands within said two years, which time expired on the 11th day of December, 1896." It was then further averred that after the maturity of said notes from Ryder, to the cross complainant, and after the expiration of the time within which the mortgagor had to redeem under the statute, and after the said Mrs. T. S. Phillips and her husband had actual notice of the rights of the cross complainant in the premises, they had some transactions with said Ryder, as a result of which they claimed that Mrs. Phillips had paid to Ryder the debt which she owed him, but that said transactions and agreement were not founded in fact and were not binding upon the cross complainant.

It was further averred in the cross bill that when Mrs. Woodruff became the owner of said lands as hereinabove stated, for value, and when Ryder endorsed and transferred the notes and mortgages and memoranda of sale, she had no notice or knowledge of any writing, or title or claim of Mrs. Mary J. Adair or complainant in the original bill in the said lands; that even if the claim

set up by her be true, she can not now be heard to claim its enforcement as against this cross complainant, because she put it in the power of John T. Adair to commit the wrong and that the complainant being a *bona fide,* innocent purchaser without notice, can not be made to suffer. It was then averred in said cross bill as follows: "That when said Ryder delivered said mortgages and notes as averred in section 4 of this cross bill, he endorsed the two notes of Brasher and wife in blank and endorsed on the two notes of John T. Adair the words 'the provisions and stipulations embodied in the case of the note are adopted and agreed to by the endorser herein.' [Signed] J. W. Ryder."

The prayer of the cross bill was as follows: "The premises considered, may it please the court to decree that by the sales made by the said Ryder on the 10th day of December, 1894, that he acquired all the legal estate vested in the mortgagee, Mrs. T. S. Phillips, and also the equity of redemption residing in the mortgagors in said mortgages, John T. Adair and D. E. Brasher; and that he having bid at said sale for said lands a sum in excess of the amount due him by the mortgagee, T. S. Phillips, that thereby and thereupon the said debt was finally and fully paid and forever discharged and extinguished and that by the transfer and endorsement by said Ryder of said mortgages to your oratrix as shown, that she became invested with and entitled to, in equity all the rights that said Ryder had acquired in and to said lands upon his making default in payment of his note to your oratrix, and that two years having elapsed since the sale under said mortgages, and the right of redemption not having been exercised by any one having the right to redeem said lands within the time allowed by law, that a perfect legal title to all of said lands be vested in your oratrix, and all right, title and interest of every kind be divested out of all parties to this cause and vested in your oratrix."

The other facts of the case necessary to an understanding of the decision on the present appeal are sufficiently stated in the opinion.

There was a motion made by the complainant in the original bill and the other defendants to the bill to dis-

miss the cross-bill of Mrs. Woodruff for the want of equity. This motion was sustained.

On the final submission of the cause upon the pleadings and proof the chancellor granted the relief prayed for in the original bill and in the cross-bill of Mrs. T. S. Phillips, and ordered accordingly. From this decree Mrs. S. E. Woodruff appeals, and assigns as error the decree sustaining the motion to dismiss her cross-bill for the want of equity, and the rendition of the final decree in the cause.

SAMUEL WILL JOHN, for appellant.—"A motion to dismiss a bill for the want of equity does not authorize the chancellor to look into the answer and proof, if there be any, but it is to be determined upon an inspection of the bill only. * * * But supposing the bill to be true, as for the purpose of the motion it must be considered, are the complainants entitled to relief?"—*Bryant v. Peters,* 3 Ala. 167. "Such a motion admits all the statements of the bill to be true, and is necessarily decided upon an inspection of the bill itself."—*Trammell v. Pennington,* 45 Ala. 679 ; *Bromberg Bros v. Heyer Bros.,* 69 Ala. 24. "It should be entertained only when, admitting the facts apparent on the face of the bill, whether well or illy pleaded, the complainant is without right to equitable relief."—*Scals v. Robinson,* 75 Ala. 368.

Mrs. Phillips, the mortgagee, joined by her husband, and for a valuable consideration, transferred both of said mortgages, by endorsing thereon "For value received I hereby transfer and assign to Jesse Ryder the within mortgage and notes attached."

This assignment was not attested nor acknowledged, nor did it contain "apt words of conveyance." Therefore it did not convey the legal "title of the mortgage, but only an equity."—*Sanders v. Cassady & Blackwell,* 86 Ala. 248 ; Code of 1886, § 1789 ; 1 Jones on Mortgages, § 727 ; Code of 1896, § 982. By this assignment, Ryder became entitled to the money secured by these mortgages and therefor empowered to "sell under the power, and pass title into the purchaser at such sale."—Code

1886, § 1844; Code, 1896, § 1040; *Wildsmith v. Tracey,* 80 Ala. 263; *Martinez v. Lindsay & Guy,* 91 Ala. 336; *Ward v. Ward,* 108 Ala. 280, and authorities there cited; *Hartley v. Mathews,* 96 Ala. 226; *Buel v. Underwood,* 65 Ala. 286.

Ryder sold under the power and bought at his own sale, and the person making the sale made a full memorandum in writing of the sale. Ryder did not, and could not, make a conveyance from himself to himself, which would, in law, change the legal status of himself or of the mortgagors or the mortgagee.—*Hambrick v. N. E. Mortgage Co.,* 100 Ala. 552. The purchase by Ryder gave him a right to compel the mortgagee, Phillips, by specific performance, to convey to him.—*Cooper v. Hornsby,* 71 Ala. 65. "This sale operated as a strict foreclosure as by a decree of a court of equity; it cut off and barred the equity of redemption."—*Harris v. Miller,* 71 Ala. 26; *Cooper v. Hornsby,* 71 Ala. 64-65; *Bailey v. Timberlake,* 74 Ala. 221; *Comer v. Sheehan,* 74 Ala. 452; *Mewbern v. Bass,* 82 Ala. 622-8.

"If a transaction resolve itself into a security whatever may be its form, and whatever name the parties may choose to give it, it is in equity a mortgage."—*Hall v. M. & M. R. R. Co.,* 58 Ala. 22. In *Newlin Fernley & Co. v. McAfee,* 64 Ala. 364, C. J. Brickell, in discussing this question says: "The form of the agreement is not material; operative words of conveyance are not essential to the creation of a charge or trust, which a court of equity will enforce as a mortgage. It is the intention of the parties to charge particular property, rights of property, or credits, with the payments of debts, which the court will regard. When that intention is deducible from their agreement the court will give affect to it and the equity created will prevail against all others, than innocent purchasers for value." This case and doctrine are fully sustained by the authorities.—*Butts v. Broughton,* 72 Ala. 298-99; *M. & C. P. T. R. R. v. Talman,* 15 Ala. 489-90; *Coster v. Banks of Georgia,* 24 Ala. 59-60; *Powell v. Jones,* 72 Ala. 398-99; *Jackson v. Rutherford,* 73 Ala. 156; *Smith v. Hiles Carver Co.,* 107 Ala. 272-76; 3 Pomeroy Equity, § 1237; Story's Equity, § 1018; 6 Am. & Eng. Ency. Law 675-681; *Ross*

[Woodruff v. Adair *et al.*]

& *Co. v. Perry,* 105 Ala. 538; *Donald v. Hewett,* 33 Ala. 548.

Courts of equity have long since disregarded the common law rule, prohibiting the assignment of *choses in action,* and such assignments will be protected and enforced in equity, if made *bona fide* and for valuable consideration.—1 Daniel on Negotiable Instruments, § 748; 2 Am. & Eng. Ency. Law (2d ed.), 1015, 1053, 1055* *Goodwyn v. Lloyd,* 1 Porter 240; *Wells v. Cody,* 112 Ala. 280.

KNOX, BOWIE & DIXON and BROWNE & DRYER, *contra.* The assignment to Ryder by Mrs. Phillips, and her husband, of the mortgages invested him with the power contained in the mortgages to foreclose them.—Code of Alabama, 1896, § 1040. The foreclosure sales and purchase by Ryder invested him with the legal title (subject to equities existing between himself and Mrs. Phillips) leaving outstanding in the mortgagors alone the bare personal privilege of redeeming within two years by virtue of the statute; and this, although he may not have formerly acquired the legal title held by Mrs. Phillips as mortgagee.—Code of Alabama, 1896, § 1040; *Johnson v. Beard,* 93 Ala. 96; *Comer v. Sheehan,* 74 Ala. 452; *Mewburn's Heirs v. Bass,* 82 Ala. 622; *Ward v. Ward,* 108 Ala. 278.

Ryder purchased at the foreclosure the Adair lands for $700, and the Brasher lands for $985, making a total of $1,685, and himself paid no part of the purchase money. The mortgage indebtedness owing by Mrs. Phillips was the consideration of the purchase. The debt of $200 owing by Mrs. Phillips to him was not thereby extinguished; but continued to exist by express agreement, and was subsequently paid in accordance with such agreement. Where land is bid in for another who pays the purchase money and title is thereby acquired in the name of the bidder, a trust results in favor of the person who paid the money by operation of law alone, and the statute of frauds (section 1041 of the Code, 1896) does not apply.—*Caple v. McCullom,* 27 Ala. 461; *Preston v. McMillan,* 58 Ala. 84; *Tillman v. Murrell,* 120 Ala. 241.

Where the purchaser himself furnishes all the money under a parol promise to hold it in trust, the promise comes within the statute; but the result is different when the other person furnishes any part of the purchase money.—*Anthe v. Heide,* 85 Ala. 236; *Preston v. McMillan, supra.*

Though no precise form of words is necessary to create an equitable mortgage, an intention to create a lien or charge upon the property must be deducible from the instrument. It must appear from the instrument that a charge is created in favor of the person who sets it up as a lien. Such is the substance of the decisions in this State, as will be seen by reference to the facts in the cases where such liens have been held to exist. *Smith v. Hiles Carver Co.,* 107 Ala. 272; *Ross & Co. v. Perry,* 105 Ala. 533; *Wood v. Holly Mnfg. Co.,* 100 Ala. 345; *Bush v. Garner,* 73 Ala. 166; *Butts v. Broughton,* 72 Ala. 298; *Powell v. Jones,* 72 Ala. 398; *Newlin v. McAfee,* 64 Ala. 357.

The trusts, not included in the statute, are implied trusts—resulting or constructive—such as spring out of the facts of the transaction, independent and exclusive of any agreement between the parties. Whenever the trust rests on an agreement, it must be created or declared by instrument in writing, signed by the party creating or declaring the same.—*Bibb v. Hunter,* 79 Ala. 351; *Patton v. Beecher,* 62 Ala. 579; *White v. Farley,* 81 Ala. 563.

The statute requires written evidence of trusts concerning lands, and it is a prohibition of the enforcement of such trusts resting merely in parol; unless they fall within the exception of trusts resulting by implication or construction of law, or which may be transferred or extinguished by operation of law. Our statute requires such trust to be created by writing. All other trusts than such as arise or result by implication or construction of law, are within its operation. Trusts arising or resulting by implication of law may be excluded by, but they do not arise from, nor are they dependent upon, the agreements of the parties. The law raises the trust. Whenever the trust, sought to be established, is dependent upon the agreement or declaration of the par-

[Woodruff v. Adair *et al.*]

ties—where it does not arise from facts proved, attending the creation of the legal estate—it can not rest in parol.—*Patton v. Beecher*, 62 Ala. 587; *Brock v. Brock*, 90 Ala. 86; *Houston v. McCurdy*, 93 Ala. 587; *Tolleson v. Blackstock*, 95 Ala. 510; *Manning v. Pippin*, 95 Ala. 537. The statute in the cases of *Patton v. Beecher*, 62 Ala. 579; *Brock v. Brock*, 90 Ala. 86; *Houston v. Farris & McCurdy*, 93 Ala. 588; *Manning v. Pippin*, 95 Ala. 537, and *Talleson v. Blackstock*, 93 Ala. 510, has been properly construed. It declares a healthy principle of law for the suppression of fraud and perjury.—*Moore v. Campbell*, 102 Ala. 448. Mrs. Woodruff required no lien on the lands, even as against Ryder. The English rule of the creation of an equitable mortgage by a deposit of title deeds as security, can not be recognized and enforced here, without departing from the letter and spirit of our legislation, without embarrassing lands with secret trusts which would hinder their alienation, and opening a door for frauds on creditors.—*Lehman, Durr & Co. v. Collins*, 69 Ala. 127.

The theory on which the cross-bill of Mrs. Woodruff was filed was that either an equitable title passed to this property by the deposit of the title papers by Ryder to Mrs. Woodruff, or, that she obtained an equitable mortgage by transfer of note and mortgage which were held as collateral by Ryder without transferring the original debt.

It cannot be disputed in Alabama "That the deposit of title papers as a security for a debt is void under the Statute of Frauds, both in the court of law and in the court of equity."—*Lehman, Durr & Co. v. Collins*, 69 Ala. 127; 6 Am. & Eng. Ency. Law (old ed.), 683; *Patton v. Beecher*, 62 Ala. 579; *Bibb v. Hunter*, 79 Ala. 351; *White v. Farley*, 81 Ala. 563; *Brock v. Brock*, 90 Ala. 86; *Houston v. Farris*, 93 Ala. 587; *Manning v. Pippin*, 95 Ala. 537; *Moore v. Campbell*, 102 Ala. 445.

Mrs. Woodruff cannot have an equitable mortgage upon this property by transfer of the mortgage and note held by Ryder, because the averments of the cross-bill and the pleadings in the case show that this mortgage and note were taken as collateral security by Ryder

to secure a note from Mrs. T. S. Phillips to him for $200, and that this original indebtedness for which the collateral was given to secure was not transferred to Mrs. Woodruff, and, therefore, the attempt to transfer these pledges by Ryder to Mrs. Woodruff is void.—§ 947 of the Code of 1896; *Pollak v. Janney*, 100 Ala. 561.

The transfer was never affirmed by Mrs. Phillips, but on the other hand was disaffirmed as soon as she ascertained the true facts.—*Pollak v. Janney*, 100 Ala. 561.

As against Mrs. Adair, the original complainant, there is still another reason why this cross-bill should be dismissed. As was shown and admitted by the cross-bill there was no delivery of Mrs. Adair's deed to Smith Bros. The delivery of a deed is necessary to give effect and no title passes until the deed is actually delivered.—*Fuller v. Hollis*, 57 Ala. 435; *Elsberry v. Boykin*, 65 Ala. 336; *Jenkins v. Harrison*, 66 Ala. 345.

Mrs. Woodruff was bound to know that the complainant had an interest in this property in equity and having notice of such equity she took subject to the equity, she claiming through and by virtue of a quitclaim deed from Mrs. Adair and Smith Bros. She was thus put on notice of all legal or equitable rights latent or otherwise.—*Derrick v. Brown*, 66 Ala. 162; *Smith v. Perry,* 56 Ala. 266; *Wood v. Holley Mnfg. Co.*, 100 Ala. 326; *McMillan v. Rushings*, 80 Ala. 402.

HARALSON, J.—The motion to dismiss for want of equity, for all purposes of the motion, admitted all the statements of the cross-bill to be true, and the chancellor was not authorized in passing on the motion, nor are we, in review of his ruling, to look into the answers to the cross-bill and proofs in the original cause, but the motion is to be determined upon an inspection of the cross-bill itself, in its relation to the original bill. *Trammell v. Pennington*, 45 Ala. 673; *Seals v. Robinson*, 75 Ala. 363.

Section 1040 of the Code provides, that "Where a power to sell lands is given to the grantee in any mortgage, or other conveyance, intended to secure the payment of money, the power is part of the security, and may be executed by any person, or the personal rep-

resentative of any person, who by assignment or otherwise, becomes entitled to the money thus secured."

Under the averments of the cross-bill, the assignment by Mrs. Phillips to Jesse W. Ryder, of the two mortgages held by her, and of the notes they secured, invested him with the power to foreclose the same in equity, or to sell the property under the powers contained in the mortgages, as fully as the mortgagee herself, before she assigned said notes and mortgages, could have done.—*Wildsmith v. Tracy,* 80 Ala. 258; *Martinez v. Lindsay,* 91 Ala. 334; *Johnson v. Beard,* 93 Ala. 96.

The fact that Ryder,—the assignee of the Adair mortgage,—purchased at his own sale, not having the power to do so, conferred by the mortgage, did not on that account, avoid the sale. It was voidable at the option of the mortgagor, exercised within two years, but valid as to all other parties, notwithstanding the statute of frauds.—Authorities cited *supra; Comer v. Shehan,* 74 Ala. 453; *Alexander v. Hall,* 88 Ala. 487; *Cooper v. Hornsby,* 71 Ala. 62; *Harris v. Miller, Ib.* 26; *McHan v. Ordway,* 76 Ala. 347; Code, § 3505.

In a case of the kind, the mortgagor, or person claiming under him in privity, may disaffirm the sale and redeem, the election to do so being seasonably expressed. As to him, until barred of his election to redeem, the mortgage has not been absolutely and finally foreclosed, and the mortgagor, or the person succeeding to his estate, continues, in contemplation of equity, to be the real owner of the fee.—*Lovelace v. Hutchinson,* 106 Ala. 417. The Brasher mortgage to Mrs. Phillips did authorize the mortgagor, or her transferee, to purchase at a foreclosure of the mortgage under its power; and, proceeding under the power conferred, Ryder, its transferee from the mortgagee, advertised and sold the lands mortgaged, and himself became the purchaser, as he did at the sale under the Adair mortgage. But, under neither did he receive a deed, but merely a certificate from the auctioneer of sale and his purchase under each mortgage. This sale under this mortgage was a foreclosure and cut off the equity of redemption.

These purchases by Ryder, although he could not have maintained under them actions of ejectment at law, did

however, give him a right to compel the mortgagee, Mrs. Phillips, by specific performance, to convey to him. *Cooper v. Hornsby,* 71 Ala. 65.

After the purchase under the Adair mortgage, and after the two years for the exercise of Adair's right of redemption had passed, and after the foreclosure of the equity of redemption under the Brasher mortgage, Ryder, desiring to borrow money from Mrs. Woodruff, obtained from her, on the 1st January, 1895, a loan of $775, and to secure the same, transferred to her, as is alleged, all his right, title and interest in and to said lands by delivering to her as collateral security, each of said mortgages and notes, and the memoranda of sales made by the auctioneer, by indorsing said notes and mortgages and memoranda to her. The right of Ryder, under his sales, to seek and enforce in equity a confirmation thereof, and conveyances to him from the mortgagors, by this transaction by him with Mrs. Woodruff, inured to her benefit, and was intended by Ryder, and so accepted by her, as a security for the debt he owed her for the money he borrowed. He had an interest, incident to and inhering in the lands, bestowed by the mortgagors themselves, and an equitable right to the confirmation of his sales so as to secure the legal in contradistinction to the equitable title in himself to them, and this interest he duly assigned to Mrs. Woodruff as a security for the debt he owed her.—1 Jones on Mortgages, § 820, a; *Wells v. Cody,* 112 Ala. 278; *Meeker Co. Bank v. Young* (Minn.) 53 N. W. Rep. 630. Whether this be styled an equitable mortgage or lien can make no difference, since the transfer was for the security of a debt. "There are many kinds of equitable mortgages, as there are variety of ways in which parties may contract for security by pledging some interest in lands. Whatever the form of the contract may be, if it is intended thereby to create a security, it is an equitable mortgage, that is, of course, if it is not a legal mortgage."—*Hall v. M. & M. R. R. Co.,* 58 Ala. 10, 22. "If the transaction resolve itself into a security, whatever may be its form, it is in equity a mortgage lien."—*Flagg v. Mann,* 2 Sumn. (U. S.), 486, 533; 13 Am. & Eng. Ency. Law, 608.

In *Newlin, Fernley & Co. v. McAfee,* 64 Ala. 364, it was said: "The form of the agreement is not material; operative words of conveyance are not essential to the creation of a charge, or trust, which a court of equity will enforce as a mortgage. It is the intention of the parties to charge particular property, rights of property, or credits, with the payment of debts, which the court will regard. When that intention is deducible from their agreement, the court will give effect to it, and the equity created will prevail against all others than innocent purchasers for value."—3 Pom. Eq. Juris., § 1237; *Wood v. Holly M. Co.,* 100 Ala. 326; *Ross v. Perry,* 105 Ala. 533.

On the averments of the cross-bill, therefore, the right that Mrs. Woodruff derived by said transfer from Ryder, created in her as to Ryder and Mrs. Phillips a lien, in the nature of an equitable mortgage, on the lands in question. She is no intruder, therefore, in this litigation. She acquired by her transfers, according to the averments of the cross-bill, the same right to a confirmation of Ryder's sale that he had, and to have said sale confirmed and the legal title to said lands invested in her, as a security for her debt.—1 Jones on Mort., § 820, a.

It is urged that this lien cannot be maintained, since the cross-bill shows it arises out of a deposit of title deeds, which cannot be done under our decisions.—*Lehman v. Collins,* 69 Ala. 127. The bill, however, does not show that the lien claimed arose from the deposit of title deeds, but quite the contrary, and the case cited has no relevancy to the facts of this case. The lien here arose from the transfer of a security of a debt presently contracted,—the right of Ryder to said mortgages and to have his sale under them confirmed in equity for his benefit,—and this, in the sense referred to in said decision, was not a mortgage arising from the mere deposit of title deeds.

The cross-bill avers that complainant therein, at the time she made said loans to Ryder and received from him said transfers, had no knowledge or notice of any

claim of Mary J. Adair in or to said notes and mort-
gages. She was, therefore, as to Mrs. Adair, on these
averments, a *bona fide* purchaser for value without no-
tice. Mrs. Adair's deed to Smith Brothers, and theirs,
by quitclaim to J. T. Adair, his conveyance of the same
to the Brashers, and their mortgage to Mrs. Phillips,
were all of record in the probate office. The deed from
Mrs. Adair to said Smith Brothers was signed, not
only by herself, but by J. T. Adair, the two being the
joint owners of the property,—Mrs. Adair's interest
arising under her exemption to the homestead of her
deceased husband. Her bill, indefinite in its averments
of an escrow, shows that this deed was not delivered by
her to Smith Brothers, but was kept in the hands of
J. T. Adair, her joint grantor, not to be delivered until
Smith Brothers had time to examine and become satis-
fied with the title, and that they, accordingly, investi-
gated the title and found it to be unsatisfactory. But
the bill goes on to aver, that said deed was delivered to
Smith Brothers, through the agency and complicity of
said J. T. Adair and H. W. Phillips,—the latter acting
as the agent and husband of Mrs. T. S. Phillips in the
transaction,—and that said Smith Brothers, on the 12th
October, 1893, conveyed the lands back to said J. T.
Adair by quitclaim deed. It further shows that, there-
after, on the 26th October, 1893, said J. T. Adair and
his wife, executed a warranty deed to said lands to D.
E. and Henrietta Brasher, who in turn, on the 1st No-
vember, 1893, mortgaged the same to Mrs. T. S. Phil-
lips. It is further averred, that all this was done by
the procurement of said J. T. Adair and H. W. Phillips
in order to divest the title out of complainant, Mrs. M.
J. Adair, and to get it into said J. T. Adair, so that he
could thereby, secure a debt he owed Mrs. Phillips, the
wife of said H. W. Phillips.

Unless there was a delivery of the deed by the grantors
to a third person, not a party to the instrument, it does
not come within the meaning of an escrow. The grantor
must have surrendered control over it. Nor can the
deed be delivered for such purpose to the grantee.—1
Dev. on Deeds, § 312; 11 Am. & Eng. Ency. Law (2d
ed.), 333, 336. There does not appear to have been

any person designated by the parties who was to re-
ceive the deed in escrow, but it does appear, that one
of the grantors therein retained the deed in his custody
and delivered it to Smith Brothers. Mrs. Woodruff, as
she avers, in making the loan to Ryder, acted *bona fide*,
without any knowledge or notice of the claim by Mrs.
Adair, growing out of, the alleged non-delivery of the
deed to Smith Brothers, but she acted on the faith of
the status of the title such as the public records showed
it at that time to be. Under these conditions, we must
hold that Mrs. Adair's deed to Smith Brothers, as to
Mrs. Woodruff was delivered and took effect as a deed
from its date, and that Mrs. Woodruff is not to be hin-
dered in the assertion of her rights by the claim of Mrs.
Adair.

The decree dismissing the cross-bill for want of equity
must be reversed, and the cause remanded.

Reversed and remanded.

SHARPE and DOWDELL, JJ., *dissenting*.